NATIONAL BANK OF COMMERCE v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. July 12, 1915.)

No. 2458.

1. BILLS AND NOTES ⬚119—CONSTRUCTION—PAYABLE TO BEARER—UNITED STATES DEPOSITORIES—FORGED CHECKS.

Notwithstanding Rem. & Bal. Code Wash. § 3400, subd. 3, providing that a bill of exchange is payable to bearer, when it is payable to the order of a fictitious person and such fact is known to the person making it so payable, checks drawn by a government disbursing officer, payable to fictitious payees, on a national bank constituting a depository, under regulations of the Treasury Department declaring that any check drawn by a disbursing officer on moneys deposited must be in favor of the party by name to whom the payment is to be made and payable to order, are not payable to bearer, and the bank, paying the checks on forged indorsements of the officer, who misappropriated the money procured thereon, cannot escape liability to the government for the loss on that theory.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 255–259; Dec. Dig. ⬚119.]

2. APPEAL AND ERROR ⬚1097, 1195—LAW OF THE CASE.

A decision of the court on appeal is the law of the case on a subsequent trial and appeal, and a question determined will not be entertained on a subsequent appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368, 4427, 4661–4665; Dec. Dig. ⬚1097, 1195.]

3. BANKS AND BANKING ⬚267—UNITED STATES DEPOSITORIES—FORGED CHECKS—ACCOUNTING.

In an action by the United States against a national bank, constituting a depository, for payments made by it on checks drawn by a disbursing officer in favor of fictitious payees and containing forged indorsements made by the officer, the bank is not entitled to credit for money paid out by the disbursing officer, upon legitimate claims incurred through his agency, in the absence of an accounting between the disbursing officer and the government.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1013; Dec. Dig. ⬚267.]

4. BANKS AND BANKING ⬚267—UNITED STATES DEPOSITORIES—PAYMENT OF FORGED CHECKS—RECOVERY OF MONEY—ESTOPPEL.

The act of the government in prosecuting for embezzlement a disbursing officer, drawing checks on a government depository, forging indorsements thereon, and applying to his own use the proceeds on the depository paying the checks, did not estop the government from proceeding against the bank to recover the payments made on the theory that the money was the property of the bank, whether the bank was a debtor to the government to the amount of the deposits, or it held the same in specie subject to government's checks or demands, since the funds were the funds of the government.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1013; Dec. Dig. ⬚267.]

5. TRIAL ⬚252—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

It is not error to refuse an instruction, where there is no pertinent testimony on which to base it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. ⬚252.]

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. APPEAL AND ERROR ⬤⟿870—GRANT OF NEW TRIAL—DISCRETION OF TRIAL
  COURT.
      No error is assignable from a denial of a motion for a new trial.
      [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3451,
   3487–3489, 3491–3512; Dec. Dig. ⬤⟿870.]
      Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern
Division of the Western District of Washington; Jeremiah Neterer,
Judge.

Action by the United States against the. National Bank of Com-
merce. There was a judgment for the United States, and defendant
brings error. Affirmed.

During the years 1907, 1908, and 1909 one M. P. McCoy was an examiner
of surveys and special disbursing agent for the Interior Department of the
United States. While McCoy was such examiner and disbursing agent,
plaintiff (defendant in error here) caused to be deposited with the National
Bank of Commerce (plaintiff in error) considerable sums of money to his
credit, to be used by him solely for the purpose of making payment of the
expenses which he was authorized to incur on account of plaintiff as such ex-
aminer and disbursing agent. The deposits were made with defendant as a
government depository, and in accordance with the laws of Congress and
regulations of the Treasury Department relating to the deposits and disburse-
ments of public moneys. McCoy, at various times within the dates mention-
ed, fraudulently and without authority of plaintiff, drew checks on the de-
fendant bank, aggregating $15,129.81, payable to the order of fictitious payees,
and thereafter forged the indorsement of such fictitious payees upon the
checks, and procured from various banks for his own use the amounts of
the checks. Subsequently such checks were presented from time to time to
the defendant, and were wrongfully, and without authority from plaintiff,
paid by it and charged against the public funds on deposit with it to the
credit of McCoy. The forgeries being discovered by plaintiff, suit was insti-
tuted on or about December 22, 1910, to recover the amount of such deposits
thus paid out by the defendant bank.

Three defenses were interposed: First, that the relation of debtor and
creditor existed between plaintiff and defendant; that it was not the duty of
defendant to inquire as to the name of the payee on such checks; that month-
ly statements of account were rendered to plaintiff, and to McCoy, its agent,
in accordance with the usual custom of banks; that it was the duty of plain-
tiff to examine such statements and the vouchers accompanying them, and
to notify defendant of such forgeries within a reasonable time; and that by
reason of the neglect of such duty the defendant has been damaged, and
plaintiff is now estopped to maintain the action; second, that the money sued
for was expended by McCoy in payment of claims against the United States
that he was authorized to pay; and third, that subsequent to the issuance of
such checks plaintiff, with full knowledge of the facts, ratified and approved
the action of McCoy in drawing them in the way in which they were drawn,
and the action of defendant in paying and discharging them.

James A. Kerr and Evan S. McCord, both of Seattle, Wash., for
plaintiff in error.

Clay Allen, U. S. Atty., of Seattle, Wash., and G. P. Fishburne, Asst.
U. S. Atty., of Tacoma, Wash.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON,
District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] This is the second appeal. Counsel for appellant here say:

"We again desire to present our contention that the checks in question were in legal effect negotiable instruments, payable to bearer, and that no liability resulted to the defendant bank in paying the checks as they did, even though the money was in the end misappropriated by McCoy to his own use."

And they rely upon the provision of 2 Rem. & Bal. Code, § 3400, subd. 3, which reads:

"A bill of exchange is payable to bearer: 'When it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable.'"

It is urged, therefore, that the checks in question were, in a legal commercial sense, payable to bearer, imputing knowledge of the fact that the checks were payable to a fictitious person to the government, because it is assumed McCoy was its agent so to issue the checks. Thus predicating their argument, counsel further rely upon Phillips v. Mercantile National Bank of New York, 140 N. Y. 556, 35 N. E. 982, 23 L. R. A. 584, 37 Am. St. Rep. 596, which it must be conceded is an analogous case, if counsel's premises are well founded. But there is this obvious distinction between that case and this: The government is a party here, and not a private person, and the government had, through its Treasury Department, promulgated Department Circular No. 102, of which the defendant, being a national depository, was bound to take notice, and it must be assumed had knowledge, in the following language:

"Any check drawn by a disbursing officer upon moneys thus deposited must be in favor of the party, by name, to whom the payment is to be made, and payable to 'order,'" with certain exceptions not material to the inquiry.

McCoy was a disbursing officer of the government, and of this fact the defendant also had knowledge. Thus it follows that the paper in question cannot be considered or treated as payable to bearer, so far, as the defendant is concerned, it being a government depository acting and operating under the regulation above quoted, and the case of Phillips v. Mercantile National Bank of New York, supra, is wholly without application.

[2] When the case was here upon the former appeal, this court held that the knowledge of McCoy was not to be imputed to the government, and in the end decided the very question that is now again insisted upon against the contention of counsel. United States v. National Bank of Commerce, 205 Fed. 433, 123 C. C. A. 501. A decision so rendered becomes the law of the case, and the litigant will not again be heard, upon a subsequent appeal, to urge the same question. Nor will the court again entertain his suit in that relation.

"It has been settled by the decisions of this court," says the Supreme Court, "that after a case has been brought here and decided, and a mandate issued to the court below, if a second writ of error is sued out, it brings up for revision nothing but the proceedings subsequent to the mandate. None of the questions which were before the court on the first writ of error can be reheard or examined upon the second. To allow a second writ of error or appeal to a court of last resort on the same questions which were open to dispute on the first would lead to endless litigation. In chancery, a bill of

review is sometimes allowed on petition to the court; but there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate on chances from changes in its members." Roberts v. Cooper, 20 How. 467, 481, 15 L. Ed. 969.

So it was said by Mr. Chief Justice Strahan, in Kane v. Rippey, 22 Or. 299, 301, 29 Pac. 1005, 1006:

"Upon a second appeal, the opinion of the court upon the former appeal, so far as the same facts appear, becomes the law of the case and governs and controls the parties and the court in every subsequent step in the cause."

To the same purpose see Corning v. Troy Iron & Nail Factory, 15 How. 451, 465, 14 L. Ed. 768; Martin v. Hunter's Lessee, 1 Wheat. 304, 355, 4 L. Ed. 97; Powell v. D., S. & G. R. R. Co., 14 Or. 22, 12 Pac. 83; Portland Trust Co. v. Coulter, 23 Or. 131, 31 Pac. 280; Stager v. Troy Laundry Co., 41 Or. 141, 68 Pac. 405.

[3] Another question presented by defendant here is whether it is entitled to credit as against the government for moneys paid out by McCoy, if he paid any such, in disbursement on legitimate claims incurred through his agency; it being claimed that the money sued for in the action, or some part of it, at least, was so disbursed by McCoy. But it can hardly be maintained, in any event, that the defendant is entitled to such moneys, or any part of them, until there is an accounting between McCoy and the government and there is found to be a balance due from the government to him. No such accounting was possible in the present controversy. The question was presented by a requested instruction, which was denied.

[4] Another proposition advanced is that the government has ratified the acts of McCoy in drawing the money from the defendant bank in the manner he did, or at least as to $5,718 thereof, and that, the government having elected to treat the money as government funds, it is now estopped to proceed against the bank, on the hypothesis that the money was the property of the bank. The contention arises in this way: McCoy was prosecuted by the government for embezzling its funds, namely, $5,718, being part of the very funds sued for. It is claimed that, prior to such withdrawal by McCoy, they were not the funds of the government, but of the bank, by reason of the fact that they had been deposited with the bank, and that thenceforward the government and the bank occupied the relationship of depositor and debtor; the bank becoming and being indebted to the government only, and not a holder of the public funds. So that, when the government was willing to treat the money withdrawn as its money, it ratified what McCoy did in withdrawing it through checks drawn to fictitious payees, and pretending to indorse them with the fictitious payees' names, and thus it has relieved the bank of all obligation.

Answering the contention, the very simple and obviously reasonable and common-sense view of the situation is that the bank was the depository of public moneys, to be drawn upon by the government or its authorized agent for public use, and it can make no sort of difference whether the bank is regarded as a debtor to the government to the amount of such moneys so deposited, or as holding the same in specie subject to the government's check or demand. The funds are

nevertheless the funds of the government. Nor can it make any difference whether they are drawn out by the fraudulent practices of the government's agent, or paid out without lawful warrant by the bank; the liability of either to reimburse the government is just the same. While the bank may not be, and is not, liable criminally, it is liable civilly. As in the case of United States v. National Exchange Bank, 214 U. S. 302, 29 Sup. Ct. 665, 53 L. Ed. 1006, 16 Ann. Cas. 1184, the defendant might have been sued as it was, or for money had and received, so McCoy may be sued for money had and received to his use, although he embezzled the public funds. We find no merit in the contention.

[5] Another instruction was requested to the effect that, if the jury should find from the evidence that, at the time the account was opened with the bank in the name of McCoy, the plaintiff instructed the defendant bank to honor all checks drawn upon said account by him, without limitation or condition, then the defendant had the legal right to honor any checks so drawn by McCoy, regardless of the fact as to whether the payees were fictitious or otherwise. This was refused, and error assigned. We have examined the record diligently, and find no pertinent testimony upon which to base such a request, and it was therefore properly denied.

[6] The next question urged is that the trial court erred in denying defendant's motion for a new trial. The motion is predicated upon alleged newly discovered evidence. A showing is made by affidavits to the effect that McCoy, when he entered upon his appointment, gave a bond in the sum of $3,000, conditioned upon the faithful performance of the duties of his office, with the United States Fidelity & Guaranty Company as surety, and that since McCoy's defalcation the Surety Company has paid to the government the amount of the bond; that upon the payment of said sum the government proceeded to reconstruct McCoy's account, and charged back to him $3,000 for salary, which it was claimed McCoy did not earn during the time he was perpetrating the frauds in question. It is claimed, therefore, that the government should be required to give credit for the amount to the defendant, and that the cause should be opened up, so that defendant might have the same allowed as an offset to the government's demand. The government, by counter affidavit, has shown that the Treasury Department had a settlement with McCoy February 9, 1910, which comprised the item of $3,000 paid by the Surety Company, and there was found to be due the government the sum of $15,221.54—a sum greater than the amount sued for. The action was not commenced until December 22, 1910. Upon this showing, pro and con, the trial court decided that the defendant was not entitled to a new trial.

No error is assignable from a denial of a motion for a new trial. Pickett v. United States, 216 U. S. 456.[1] And that the motion is based upon newly discovered evidence does not constitute an exception. Holmgren v. United States, 217 U. S. 509, 521, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778.

Judgment affirmed.

ROSS, Circuit Judge (dissenting). There was evidence given tending to show that a part of the money that the government deposited with

[1] 30 Sup. Ct. 265, 54 L. Ed. 566.

the bank to McCoy's credit, to be disbursed by him in the course of his duties as the government's agent, was actually expended by him in legitimate work done by him for the government, although drawn by him from the bank in a fraudulent manner, and there was also evidence given to the effect that the government, subsequent to the fraudulent acts of McCoy, caused him to be indicted, prosecuted, convicted, and imprisoned for the embezzlement of $5,718 of the moneys fraudulently withdrawn by him from the bank. Based upon that evidence the bank requested the trial court to instruct the jury, among other things:

That if they should find "that any portion of the money sued for in this action was so expended by the said McCoy in payment of legitimate claims against the United States, created by him and which he had a right to create, then I instruct you that the plaintiff cannot recover for such portion of the sum sued upon as was so expended by the said McCoy," and that if the jury should find "that the said sum of $5,718, referred to in said indictment and introduced in evidence in this case, constituted a portion of the $15,129.81 sued for in this action, then I instruct you that the plaintiff cannot recover for the said sum of $5,718, and such sum must be deducted from the total amount of $15,129.81, for the reason that the judgment of conviction against the said M. P. McCoy upon said indictment conclusively established the fact that such sum of $5,718 was the money and property of the United States, and by filing such indictment against the said McCoy for such sum, and procuring a conviction thereon, the United States elected to treat said sum mentioned in said indictment as its own property, and thereby waived its claim for said sum against the defendant bank."

The court below refused to give either of those instructions, but, on the contrary, directed a verdict for the government for the full amount claimed, which was returned, and to which action the bank reserved exceptions.

It must be remembered that the government's action in this case is against its depository, and not against McCoy, and I am unable to see that it has any legal or moral right to recover from the bank that portion of the money in question actually withdrawn and expended by its agent in the legitimate business of the government, nor am I able to see how the rights of the bank in respect to such portion of the money can be made to depend upon the ultimate adjustment of McCoy's accounts with the government. And while it is perfectly true that the criminal prosecution and punishment of its dishonest agent would in no respect bar the government from also recovering from him by civil process all the money that he embezzled, I am inclined to think that it should not be allowed to recover from its *depository* money paid out by the latter, and which money the government thereafter procured to be adjudged to have been *embezzled from it* by its agent.