## BRETT et al. v. UNITED STATES.
### No. 8280.

Circuit Court of Appeals, Ninth Circuit.

Nov. 16, 1936.

Funkhouser & Twohy and Lyle D. Keith, all of Spokane, Wash., for appellants.

J. M. Simpson, U. S. Atty., of Spokane, Wash., and B. E. Stoutemyer, Dist. Counsel, Bureau of Reclamation, of Portland, Or., for the United States.

306

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Defendants in a condemnation proceeding have appealed from a judgment in their favor.

In July, 1933, the government allocated $63,000 for the construction of Grand Coulee Dam in the Columbia river in the state of Washington. The purposes, in constructing the dam as set forth in the act, are to improve navigation, for power development and for irrigation. The entire dam will cost $175,000,000 and the foundations of the dam will cost $60,000,-000. The first construction work was done in January, 1934. The specifications for the structure were distributed among the contractors in May, 1934, bids for the construction were first submitted in July, 1934, and the contract awarded thereafter. The contract provides that the gravel to be used is to be taken from a gravel pit located on land, which at the time of this proceeding was owned by defendant Brett, except for 2.82 acres which were owned by defendant Schreckengast. The amount of land taken by appellee is approximately 235 acres, and is a part only of Brett's holdings.

On April 19, 1935, the complaint herein was filed, and on the same day an order was entered providing "that the United States * * * have immediate possession of the" property in question. The time of the taking does not appear from the record before us, either from the complaint or the evidence, but both parties have apparently assumed that the taking occurred on April 19, 1935. The trial court in its instructions said that just compensation does not exceed "the full, fair cash market value of the property at the time of the taking * * * and the controlling time in this case is the date of the filing of this proceeding, which was April 19, 1935." From this statement it could be inferred that the time of taking was April 19, 1935.

The land in controversy, eliminating the gravel feature, is best adapted to grazing land. A portion of it is tillable, but the average rainfall is from eight to ten inches yearly. A part of the land has gravel outcroppings, and a part is hilly.

There was uncontradicted testimony that the land contains from 35,000,000 to 60,000,000 cubic yards of good quality sand and gravel. However, the testimony shows that commercially, the sand and gravel has no value, except in its use in constructing the dam. The reason is that the cost of delivering processed gravel from the land in controversy to the nearest towns of any size where there would be a market, is six to seven times the retail price of gravel in those towns.

If the use of the land in the construction of the dam could not be considered, the value thereof is considerably less. One witness, experienced in real estate valuation testified on behalf of appellee that the value of the land taken was $2769; three others testified that the value was $2,988.-40. All of these witnesses testified that the severance damage was $360. The amount of the tender paid into court was $2,910.

Defendant Brett testified as to the value he placed on the whole of his land. It could be inferred from this testimony that the value of the property taken was approximately $6,600.

It was defendants' contention that prior to the taking of the land by appellee, and the actual commencement of construction operations, but within the period when the construction of the dam was considered as an immediate probability or possibility, the value of the land increased because of its use for sand and gravel, and because it was peculiarly adapted for use as a townsite. Stating this contention in defendants' words, the defendants were "entitled to any increment arising from the proposal of the improvement so far as such proposal has affected the fair market value prior to the taking," but that "No consideration should be given to any element resulting subsequently to or because of the taking."

On cross-examination of appellee's witnesses, defendants attempted to bring out that there was an increase in value, but objections of appellee were sustained to the questions propounded. No offers of proof based on the questions were made however.

In their case, in chief, defendants attempted by questions to show the increased value of the land. Objections to these questions were sustained whereupon defendants made offers of proof to show that the land because of its gravel deposits had a market value of $100,000, as would be stated by one witness; a value of $90,000 as would be stated by another witness, or a value of $75,000 as would be stated by another witness. Defendants also offered to prove by another witness that the land be-

cause of its adaptability as a townsite had a market value of $40,000.

The jury found that the value of defendant Brett's property was $3,000, and that the severance damages were $500. The jury found for defendant Schreckengast in the sum of $80. Defendants appealed from the judgment entered in accordance with the verdicts.

On cross-examination of appellee's witness Roddy, the following question was asked: "Mr. Roddy, did you in estimating the value of the land in question and as of April 19, 1935, or such earlier date as the construction of the Grand Coulee dam became a moral certainty, give any value, any element of value, to this land because of its special adaptability for town site purposes?" Appellee's objection was sustained, and defendants made no offer to prove what the witness would testify if permitted.

On cross-examination of appellee's witness Prowell, appellee's objection was sustained to the following question: "Mr. Prowell, before the Grand Coulee dam was definitely decided upon, did not the probability of its ultimate erection favorably affect the value of the land in the immediate neighborhood of that projected development?" An objection was sustained to another question asked in the same examination of the same witness defendants. The question asked was: "Mr. Prowell, in your opinion did the lands in question, that is, the Brett lands, have any value because of their special adaptability for use either for townsite purposes or the production of sand and gravel prior to the inclusion of these lands in the entire area taken for construction of the Grand Coulee dam?" After the objections were sustained, defendants made no offer to prove what the witness would have testified if he had been permitted to answer the questions.

■ Defendants specify as error the ruling of the trial court in sustaining these objections. Their argument in support thereof is devoted to the proposition as to whether or not the trial court used the correct measure of damages. Appellee on the other hand argues that "the record must disclose the substance of the proffered evidence before there can be a reversal because of its rejection." The reason for the rule is stated to be that "judgments are not reversed unless error is made to appear, and without something in the record to disclose the substance of the rejected evidence error does not appear."

The rule urged by appellee has no application, however, where the witness testifies in person, where the question propounded to him is proper in form, and is so framed as to clearly admit of an answer favorable to the claim or defense of the party propounding the question. Fidelity & Deposit Co. of Maryland v. Lindholm (C.C.A.9) 66 F.(2d) 56, 89 A.L.R. 279. There is a strong argument that no offer of proof is required at any time after an objection to a question is sustained on cross-examination, because a party could not very well know what an adverse witness would testify. However, the rule as stated was applied, in the case cited, to a question asked on cross-examination. We invoke the rule of stare decisis, and follow that case.

The witnesses of whom the questions were asked, were testifying in person, and the questions were so framed as to admit of a favorable answer to defendants. The only thing left to determine is whether or not the questions were proper in form. To determine that question it is necessary to refer to the rules of law regarding compensation for property taken by eminent domain.

■ The compensation which must be paid the owner of property which is taken by eminent domain, is the fair market value of the property at the time of the taking. Olson v. United States, 292 U.S. 246, 54 S. Ct. 704, 78 L.Ed. 1236, and cases cited. See, also, West v. C. & P. Tel. Co., 295 U. S. 662, 671, 55 S.Ct. 894, 79 L.Ed. 1640.

■ If the trial court in its instructions, fixed the date of the taking to be April 19, 1935, then the first question quoted above was objectionable in form because the witness Roddy was asked whether he gave any value to the land because of its adaptability for townsite purposes in estimating the value of the land as of the date of the taking "or such earlier date as the construction of the Grand Coulee dam became a moral certainty." The value of the land prior to the taking is immaterial, as would be the elements entering into that value. If, on the other hand, the trial court did not fix the date of the taking in its instructions, then the evidence sought to be adduced by the question was immaterial, because the presumption of validity of the judgments compels us to presume that the

value asked for, was a value at a time either prior or subsequent to the date of taking. The value of the land at the time of the taking, only, is material.

The other two questions asked of the witness Prowell are objectionable in form for a like reason. Both relate to the value prior to the taking. That time is immaterial, for it is only the value at the time of the taking which is material. There was no error in sustaining the objections to those questions.

Appellee's objection to a question propounded by defendants to their witness Gauntlett was sustained, whereupon defendants made an offer of proof that because of the special adaptability of the land for a gravel pit, its value was not less than $100,000 "prior to the taking." Similar questions were propounded by defendants to their witnesses Moore, Harvey, and Donaldson. Each time after appellee's objection to the question was sustained, defendants offered to prove what the witness would have testified. In regard to each witness either the question propounded asked, or the offer of proof made disclosed, that the value was fixed as of a time "prior to the taking." There can be no error in excluding immaterial evidence, for it could not properly be admitted. 22 C.J. 159.

Defendants requested the trial court to give three proposed instructions. As to the first and third proposed instructions, we believe the trial court instructed the jury substantially as requested, and there was no error in refusing to give these instructions.

The second proposed instruction was as follows: "Although it is not proper to estimate land condemned for public purposes by the public necessities or its worth to the public for such purpose, it is proper to consider the fact that the property is so situated that it will probably be desired and available for such a purpose. Accordingly, if you find that the property of the defendant Brett was so situated and so constituted that it was probably desirable and available for use in the construction of the Coulee Dam, and such probability and availability affected its market value, all this may be taken into consideration in determining the amount of compensation to be awarded to the owner." Assuming, without deciding, that the requested instruction, was a correct exposition of the law, there was no error in refusing the instruction because there was no evidence before the jury that "such probability and availability affected its market value," and none was properly offered. It is not error to refuse an instruction, where there is no pertinent testimony on which to base it. Wilmington Star Mining Co. v. Fulton, 205 U.S. 60, 27 S.Ct. 412, 51 L.Ed. 708; Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815; Ann.Cas.1914D, 905; National Bank of Commerce v. U. S. (C.C.A. 9) 224 F. 679, 140 C.C.A. 219.

The trial court instructed the jury as follows:

"The owner of property taken is not entitled to have taken into consideration any increase in value that will result from the use to which the property is to be put by the appropriating party."

"You must not add any element of increment or increased value to the property which the proposal to construct or the actual construction of the project in question may have given to that land in common with all other land similarly situated in the community."

Appellant excepted to these instructions and urges that the trial court erred in giving them.

Appellant contends that the instructions are incorrect statements of the law. Assuming, without deciding, that the instructions are erroneous, we believe no prejudicial error occurred, because, in effect the trial court instructed the jury to disregard a kind of evidence, of which there was none. Had the instructions been apposite statements, still the jury could not have found an increased value, because there was no evidence that the value was increased.

Defendants have contented themselves with a discussion of the abstract legal question of the correctness or incorrectness of the instructions given and of those refused. They have pointed out no evidence properly admitted, to which any of these instructions might have been applied. No prejudice having been shown, none should be presumed.

Affirmed.

MATHEWS, Circuit Judge.

I concur in the result.

The United States brought this condemnation proceeding under the Acts of August 1, 1888, c. 728, 25 Stat. 357 (40 U. S.C.A. §§ 257, 258); February 26, 1931, c.

307, 46 Stat. 1421 (40 U.S.C.A. §§ 258a–258e); and June 16, 1933, c. 90, § 203 (a), 48 Stat. 202, 40 U.S.C.A. §´403 (a), to determine the amount of compensation which should be paid for certain lands of appellants, which were taken for public use in the construction of Grand Coulee Dam in the Columbia river, in the Eastern District of Washington. There was a jury trial, resulting in a verdict and judgment awarding $3,500 to appellant Brett and $80 to appellants Schreckengast. These awards appellants deem inadequate. Hence this appeal.

There are 16 assignments of error. Assignments 1 to 11, inclusive, are to the exclusion of testimony regarding the value of the condemned lands. The excluded testimony related to the value of the lands prior to the time they were taken by the Government. It should have been limited to their value at the time of taking. Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236. Not being so limited, the testimony was properly excluded.

Assignments 12, 13, and 14 are to the refusal of instructions requested by appellants. Assignments 15 and 16 are to the giving of instructions excepted to by appellants. Assuming, without deciding, that the requested instructions were correct statements of the law, and that the instructions excepted to by appellants were incorrect, it does not follow that reversible error was committed. To be reversible, the error must be shown to be prejudicial. Houston v. Southwestern Bell Tel. Co., 259 U.S. 318, 325, 42 S.Ct. 486, 66 L.Ed. 961; Walton v. Wild Goose Mining & Trading Co. (C.C.A.9), 123 F. 209, 219.

To show prejudice in the refusal of requested instructions, it must be shown that there was evidence to which such instructions were properly applicable, and that the subject-matter thereof was not sufficiently covered by the charge as given. Sweeney v. Erving, 228 U.S. 233, 242, 33 S.Ct. 416, 57 L.Ed. 815, Ann.Cas.1914D, 905; Bird v. United States, 187 U.S. 118, 132, 23 S.Ct. 42, 47 L.Ed. 100; National Bank of Commerce v. United States (C.C.A.9) 224 F. 679, 683. To show prejudice in the giving of instructions, it must be shown that the evidence was such that these instructions, when considered with and in the light of the whole charge, might have misled the jury. Northern Pac. Ry. Co. v. Teeter (C.C.A.7) 63 F. 527, 529.

Appellants in this case have not made or attempted to make any such showing. They have pointed out no evidence to which the requested instructions or those excepted to by them might have been applied. The burden of searching the record for such evidence rested upon counsel for appellants and should not be assumed by this court. Walton v. Wild Goose Mining & Trading Co., supra (C.C.A.) 123 F. 209, 211.

The judgment should be affirmed.