# LONERGAN v. UNITED STATES. *

## No. 8218.

Circuit Court of Appeals, Ninth Circuit.

March 5, 1937.

*Rehearing denied May 10, 1937.

592

Donald A. McDonald and Carl B. Luckerath, both of Seattle, Wash., and Oscar L. Willett and Pierce Lonergan, both of Los Angeles, Cal., for appellant.

J. Charles Dennis, U. S. Atty., and F. A. Pellegrini and Gerald Shucklin, Asst. U. S. Attys., all of Seattle, Wash., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant was convicted and sentenced on seven counts of an indictment charging violations of section 215 of the Criminal Code (18 U.S.C.A. § 338), which provides: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ...... shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card, package, writing, circular, pamphlet, or advertisement, whether addressed to any person residing within or outside the United States, in any post office, or station thereof, or street or other letter box of the United States, or authorized depository for mail matter, to be sent or delivered by the post office establishment of the United States ...... shall be fined not more than $1,000, or imprisoned not more than five years, or both."

There are 40 assignments of error. Three of the assigned errors (assignments 2, 3, and 30) are not specified in appellant's brief, as required by our rule 24, and are therefore disregarded.

Assignment 1 is that the trial court erred in overruling appellant's demurrer to the indictment and to each count thereof. The grounds of appellant's demurrer are (1) that the indictment does not in any count thereof state facts sufficient to constitute an offense against the laws of the United States, and (2) that the allegations of each count are so vague, indefinite, and uncertain as not to apprise appellant of the true nature of the accusation against him.

The allegations of count 1, so far as material, are copied in the margin.[1] Ex-

[1] Count 1 alleges: "That heretofore and prior to the several acts of using the United States mails hereinafter set forth, [appellant] and John R. Walsh, ...... hereinafter in this indictment called defendants, had devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises from [certain named persons] and divers other persons to the grand jurors unknown, all hereinafter in this indictment called investors, and being of the class of persons whom the said defendants believed they might induce to open margin accounts for trading in silver for future delivery; the said scheme and artifice being in substance and effect as follows, to wit:

"The said deefndants, being engaged in the alleged silver brokerage business at Seattle, Washington, under the firm names of Pierce Lonergan and Company, Louis Martin and Company, Gill and Company, and P. A. Jordan and Company, and operating the so-called Seattle Silver Market under the name of the Seattle Metal Exchange, would represent themselves and their said firms to the public as silver brokers of financial responsibility and standing, worthy of the confidence of the said investors and well qualified and in a position to advise them regarding investments in silver futures, and would advise and urge the said investors to open accounts with them, the said defendants, and their said firms, and to purchase silver on margin for future delivery, and pay over to the said defendants their money on marginal payments therefor; and for the purpose of inducing the said investors to open such accounts, and purchase such silver futures on margin, the said defendants would pretend and represent that the Seattle silver market was entirely reliable and responsible and functioning in connection with the great silver markets at New York, London, Shanghai and Bombay, and with prices following such markets; that the prices

cept as to form and contents of letters, names, and addresses of persons to whom they were mailed, and dates of mailing, the other counts are similar to count 1. Each count alleges that, having devised a scheme to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, defendants, for the purpose of executing said scheme, placed in the Seattle post office a letter addressed to a person within the United States, to be sent and delivered by the post office establishment of the United States.

on the said Seattle Silver Market could not break substantially below such world markets because in case of an emergency such world markets would come to the support of the said Seattle exchange; that small investors could trade on the said Seattle market more advantageously than on the New York market because they could here purchase in smaller lots; that the price of silver was certain to advance and profits from purchase thereof would be practically certain; that investors ought to buy silver as a protection against inflation, because inflation was coming but an investor owning silver would not be adversely affected thereby; that assets in the form of silver would be as liquid as a bank account and more safe; that an investment could be made with as little as a $50.00 down payment; that all the money paid in by investors on margin contracts was either used to purchase silver for future delivery on investor's contracts, or was held in a special clearing house fund until required in settlement of such contracts; and that any investment in silver through the said defendants and their said firms, and through the said Seattle market would be absolutely safe for the said investor.

"Whereas, in truth and in fact, as the said defendants then and there well knew, the said defendants and their firms were not brokers of financial responsibility and standing, worthy of the confidence of the said investors, but were impecunious, financially irresponsible and without resources or ability to fulfill their commitments, and without qualifications for advising anyone regarding investments of any sort; the said Seattle Silver Market as operated by the said defendants would not be and was not reliable and responsible, and was not functioning in conjunction with the silver markets of the world, and prices thereon could not be depended upon to follow the world markets, but the said Seattle Market would be and was governed by the manipulations of the said defendants and their accessories; the representations regarding the desirability of investments in silver would be and were made only to lead investors to trade with the said defendants to their loss; it was true that the said defendants would accept subscriptions for only small amounts of silver, and would accept small margin payments thereon, but they would do so only for the purpose of enticing small and inexperienced investors into the speculative trading and to pay over their money to the said defendants, and the funds received by the said defendants on such accounts would not be and were not all used to purchase silver or covered into a trust fund, and would not be and were not held for the future settlement with investors on their contracts, but would be and were appropriated and consumed by the said defendants in their operations and would be lost to the said investors.

"And it was a further part of the said scheme and artifice that when the said defendants should reach a point in their said operations where they could no longer conceal their shortages, they, the said defendants, would take steps deliberately and fraudulently to depress the price of silver on the said Seattle market far below the legitimate price, and would demand from said investors large additional sums of money to protect their accounts, well knowing that most of said investors would be unable to comply with such demands and so would have their equities wiped out, and said defendants would thus be able to close out the accounts of all excepting a very small number of such investors, and the said defendants intended so to defraud and would and did so defraud the said investors.

"And the said defendants, so having devised and intending to devise the scheme and artifice aforesaid, for the purpose of executing the said scheme and artifice and attempting so to do, ...... did knowingly, wilfully, unlawfully and feloniously place and cause to be placed in the United States Post Office at Seattle, in the Northern Division of the Western District of Washington, and within the jurisdiction of this Court, to be sent and delivered by the Post Office establishment of the United States, a certain letter in an envelope with postage thereon duly prepaid then and there addressed to Mr. Frank Givens, Port Orchard, Washington, the said letter so enclosed in said envelope being then and there in words and figures as follows, to wit: [setting forth the letter]; ...... contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

594

■ It is contended by appellant that the indictment is insufficient, in that it fails to allege that the representations which the scheme contemplated would be made were actually made, or that the other acts which the scheme contemplated would be done were actually done. No such allegation was necessary. The gist of the offense was not the making of representations or the doing of other acts which the scheme contemplated, but the use of the mails for the purpose of executing the scheme. Redmond v. United States (C.C.A.1) 8 F.(2d) 24, 28; United States v. Quimby (C.C.A.2) 51 F.(2d) 167, 170; Whitehead v. United States (C.C.A.5) 245 F. 385, 388; Cochran v. United States (C.C.A.8) 41 F.(2d) 193, 197; Rude v. United States (C.C.A.10) 74 F.(2d) 673, 675. Each count of the indictment sufficiently charges a violation of. section 215 of the Criminal Code (18 U.S.C.A. § 338).

■ There is no merit in appellant's contention that the indictment is too indefinite and uncertain. It charges the offense with sufficient particularity (1) to apprise appellant of what he must be prepared to meet and (2) to make the judgment a bar to a second prosecution for the same offense. Nothing more was required. Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; Greenbaum v. United States (C.C.A.9) 80 F.(2d) 113, 116; Wheeler v. United States (C.C.A.9) 77 F.(2d) 216, 218; Johnson v. United States (C.C.A.9) 59 F.(2d) 42, 44; Crane v. United States (C.C.A.9) 259 F. 480, 482. Appellant's demurrer was properly overruled.

■ Assignment 4 is that "the court erred in denying [appellant's] motion for an order requiring the Government to elect upon which one of the two schemes, charged in the indictment, [appellant] was to be tried." The motion was as follows (appellant's counsel speaking): "One other motion. It has been my conviction since the first time I saw this indictment that it charges two schemes. The first charge was that they [defendants] were just going to get this money and steal it. The other scheme was that they were going to rig the market. At this time I move ...... that the Government be required to elect on which of the two schemes [appellant] is to be tried."

The motion was not well founded. The indictment does not charge any scheme to steal money nor any scheme to rig the market. It charges "a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises." Appellant now contends that this constituted two schemes—(1) a scheme to defraud and (2) a scheme to obtain money by false and fraudulent pretenses, representations, and promises—and that the government should have been required to elect upon which of these schemes it would rely. The two last-mentioned schemes were not mentioned or referred to in appellant's motion. Whether they were two schemes or one, and whether, if two, the government could or should have been required to elect between them, are questions which, not having been raised in the trial court, are not before us and will not be considered.

■ Twenty-eight assignments (numbered 5, 9 to 25, inclusive, and 31 to 40, inclusive) are to the admission of and refusal to strike out evidence. The assignments do not indicate that any of this evidence was objected to in the trial court. They do not state what objections, if any, were made, nor the grounds thereof, nor the grounds, if any, on which appellant moved to strike out the evidence. Such assignments do not conform to our rule 11 and will not be considered. Cody v. United States (C.C.A. 9) 73 F.(2d) 180, 184; Goldstein v. United States (C.C.A.9) 73 F.(2d) 804, 806.

■ Assignment 6 is that the trial court erred in denying appellant's motion for a directed verdict. The denial was proper. The scheme described in the indictment was proved, substantially as alleged.[2] There was substantial evidence that appellant devised the scheme and, for the purpose of executing it, mailed the letters set forth in the indictment, or caused them to be mailed. A detailed statement of the evidence would serve no useful purpose. We have examined it all and find that it amply warranted submission of the case to the jury.

■ Assignment 7 is that the trial court erred in denying appellant's motion for a new trial. This is not a valid assignment. The denial of a motion for a new trial is not reviewable on appeal. Goldstein v. United States, supra (C.C.A.) 73 F.(2d) 804, at page 807.

[2] See footnote 1.

Assignment 8 is that the court erred in pronouncing judgment and sentence upon appellant. This assignment is too general to merit consideration. Oras v. United States (C.C.A.9) 67 F.(2d) 463, 465.

Assignment 26 is that "the court erred in giving that portion of instruction No. 44,[3] referring to dummy and street accounts, to which exceptions were taken and allowed. ....... " There was only one exception to this instruction. It was as follows: "I want to except to the instruction in which your Honor commented about the money being solicited on a three per cent a month basis, dummy accounts, and I cannot remember all the instruction, but stating that as a one-sided and unfair comment on the evidence. I know your Honor has a right to comment, but I think your Honor should state the converse as well." There was no merit in this exception. Instruction No. 44 did not mistake or unfairly comment on the evidence. If appellant wished the court to "state the converse," he should have proposed an instruction embodying the desired statement. Not having done so, he cannot complain of the court's failure to give such an instruction.

Assignment 27 is that "the court erred in refusing to instruct the jury, as requested by [appellant], in addition to instruction No. 38 given by the court, that as a matter of law, the effect of the President's proclamation of August 9, 1934, was to close private silver exchanges in the United States." The record shows no such request. It shows an exception to the trial court's failure to give the additional in-

struction here referred to, but no request that such additional instruction be given. Error cannot be predicated upon refusal of a request not shown to have been made. Levine v. United States (C.C.A.9) 79 F. (2d) 364, 371.

Assignments 28 and 29 are to the refusal of requested instructions. Assuming, without deciding that these were correct statements of law, it does not follow that, in refusing them, reversible error was committed. Error, to be reversible, must be shown to have been prejudicial. Walton v. Wild Goose Mining & Trading Co. (C. C.A.9) 123 F. 209, 219. To show prejudice in the refusal of requested instructions, it must be shown that there was evidence to which such instructions were properly applicable. Sweeney v. Erving, 228 U.S. 233, 242, 33 S.Ct. 416, 57 L.Ed. 815, Ann.Cas. 1914D, 905; Bird v. United States, 187 U. S. 118, 132, 23 S.Ct. 42, 47 L.Ed. 100; Brett v. United States (C.C.A.9) 86 F.(2d) 305, 308; National Bank of Commerce v. United States (C.C.A.9) 224 F. 679, 683.

Appellant has not made or attempted to make any such showing. He has pointed out no evidence to which the requested instructions might have been applied. The burden of searching the record for such evidence rested upon appellant's counsel and should not be assumed by this court. Walton v. Wild Goose Mining & Trading Co., supra. No prejudice being shown, none will be presumed. Brett v. United States, supra.

Judgment affirmed.

---

[3] The court's charge consisted of 57 numbered instructions. Instruction No. 44 was as follows: "In considering whether the defendant Lonergan intended to mislead and defraud the investors, you should study all the circumstances, and all the acts performed by him, as shown by the evidence admitted before you. There has been testimony as to money solicited on promises of profits of three per cent a month; there has been testimony that the safety of the principal would be guaranteed and that the money paid over by the investors would be kept in a clearing house fund; there has been testimony regarding dummy accounts and transactions alleged to have been made by the defendant through such dummy accounts and street names; there has been testimony regarding the creation of the market price of silver futures or silver for future delivery on the Seattle market during the last few days of July and early in August of 1934, and of statements and representations made by the defendant Lonergan and by Walsh in explanation of such creation. All such testimony is to be considered by you fairly and fully, and it is for you to determine first whether such representations and promises and such acts were actually made, or caused to be made by the defendant Lonergan, and if so made, whether they were made honestly, whether he himself believed them and made them in good faith, or whether they were made for the purpose of misleading and deceiving."