**UNITED STATES v. 3969.59 ACRES OF
LAND et al.**

No. 1529.

District Court, D. Idaho, N. D.

Sept. 6, 1944.

John A. Carver, U. S. Dist. Atty., and E. H. Casterlin and R. W. Beckwith, Asst. U. S. Dist. Atty., all of Boise, Idaho, for plaintiff.

H. J. Hull, of Wallace, Idaho, for defendants Edward J. and Jane Doe Bloom.

CLARK, District Judge.

This action was brought by the United States of America to ascertain and award just compensation for the taking of certain lands required by the Government for Public use.

A good many different tracts of land were involved in the entire proceeding, but all that the Court is concerned with is three parcels owned by E. J. Bloom and wife and designated and referred to throughout the trial as parcels 106a, 106b and 116. The cases having been tried before a jury, with a verdict fixing the compensation for the taking of the lands.

Parcel 106a comprises two units, one of 295 acres situated in section 33, Township 54 N, Range 2 W B M designated as 106a–1 and one of 480 acres situated in Sections five and eight, Township 53 N, Range 2 W B M.

Parcel 106b contains 3.5 acres situated in Section 4, Township 53 N, Range 2 W B M, and parcel 116 is comprised of two units, one containing 240 acres situated in the w½ Section 4 Township 53 N, Range 2 W B M and containing 80 acres situated in the east half of Section 4, Township 53 N, Range 2 W B M.

The only issue tried was the market value of these parcels of land on September 19, 1942.

The jury found the market value as follows: For parcel 106a, $4975. For parcel 106b, $50. For parcel 116, $4975.—a total of $10,000.

This action is now before the Court on motion for new trial on the following grounds:

"That the evidence is wholly insufficient to support the verdict, the sole issue submitted to the jury being the fair market value of the above identified lands"

"The verdict is manifestly and palpably against the preponderance of the evidence"

"The verdict is contrary to law"

"The verdict is contrary to the following instructions of the Court:

" 'The question as to the amount of compensation is not a question of what the property taken would have been worth to the owners if they had retained the property because it might have possessed a greater value to them than it had on the open market'

" 'So many and varied are the circumstances to be taken into account in determining the market value of the various kinds of property condemned for public use, that it is impossible to formulate an exact rule to govern its appraisal in all cases. In general, the most profitable use for which the property on September 19, 1942, was adaptable and needed, or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value but to the extent that the possible demand for such use affected the market value. You should consider all the uses for which the property on September 19, 1942 was reasonably and practically suitable and adaptable including the highest and most profitable use or such use as on that date might reasonably be expected in the reasonably near future. Its reasonable availability for uses which are of such character as to be reflected in the market value of the property at the time it was taken should be taken into consideration in determining the fair market value of the property and the just compensation to the owner.'

" 'The market value of the property is neither to be enhanced nor diminished by any remote possibility that some favorable or unfavorable event or action may perhaps take place in the future. You must not take into consideration any future event or condition, the occurrence of which is not fairly shown by the evidence to have been reasonably probable on September 19, 1942, or within the reasonably near future. Future events which might effect market value if they did occur, and the occurrence of which were within the realm of possibility are not to be considered in determining the market value as of that date unless you believe that the evidence fairly establishes that it was then reasonably probable that they would occur in the reasonably near future. You are entitled to consider such future events which under the evidence were reasonably probable in the reasonably near future, provided, you believe that a willing seller and a willing purchaser both of whom are reasonable who are not required to sell or buy, would have considered in agreeing upon the cash purchase price for the property taken.'

"The verdict is excessive and appears to have been given under the influence of passion and prejudice."

"Refusal of the Court 'to instruct the jury to return a verdict fixing the fair market value of the respective parcels of land involved here in a sum not to exceed the maximum appraisement or value placed upon it by the Government witnesses, on the ground and for the reason that there is no competent testimony to support the fixing of the value of any parcel in any amount whatever exceeding the greatest amount fixed by the Government witness.' as requested by the petitioner."

The first of these assignments is the one to consider for if the evidence is sufficient to support a verdict, the other assignments necessarily fall, and need not be considered.

The object of a motion for new trial is to give the Court an opportunity to re-examine the facts as shown by the evidence to determine whether the findings by the jury should be re-examined by granting a new trial. It is ably and well stated by counsel for the defendants that:

"On a motion for new trial the evidence in support of the verdict must be conceded the greatest probative force to which it is fairly entitled. Only when it then fails is a new trial justified."

"It is a jury, not the Court which is the fact finding body. It weighs the contradictory evidence and inferences, judges the credibility of the witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable."

"Evidence of the discovery of mineral deposits on land sought to be condemned is admissible on the question of value."

"Prospective profits from mineral deposits while not a measure of damage or value are nevertheless admissible and the jury may consider them in determining the question of market value."

"Whatever is within the range of reasonable deduction from all of the evidence

is a legitimate inference and conclusion and is within the province of the jury."

It is also a well settled rule that the granting or denying of a motion for new trial in Federal Court rests in the discretion of the trial Court but this settled rule of law is like many other rules of law where we find exceptions to the rule, and if a plain injustice has been suffered by either party to the action and there is no competent evidence to support the finding of the jury, then the overruling of a motion for new trial is termed an abuse of discretion and although the trial Court possesses a discretion it must be exercised wisely and if it clearly appears that it has been exercised unwisely, and to have been plainly abused then it is reviewable upon appeal. If there is a legal ground that requires the Court, in the interest of justice, to grant a new trial then there is no basis for the Court to act arbitrarily.

Taking the foregoing rules as a guide in deciding the question now before the Court, we must look to the competent evidence which was placed before the jury in this case and upon which they were required to act, and determine whether the evidence was sufficient to support their verdict, and if the verdict is not supported by the evidence then it is the duty of this Court to set aside the verdict and grant a new trial in the exercise of sound discretion.

Rule 59 of the Rules of Civil Procedure for the District Courts of the United States provides in part: "Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. * * *"

With this short statement we approach the consideration of the evidence. First as to parcel 106a. Three witnesses testified for the Government as to the value of this parcel as of September 19, 1942. M. E. Thompson being duly qualified as an expert fixed the market value at $1475 for parcel 106a–1 and $2400 for parcel 106a–2, a total for parcel 106a of $3875.

F. W. Fitts being duly qualified as an expert fixed the market value at $1475 for parcel 106a–1 and $2000 for parcel 106a–2, a total for parcel 106a of $3475.

A. L. Gridley being duly qualified as an expert fixed the value at $885 for parcel 106a–1 and $2000 for parcel 106a–2, a total for parcel 106a of $2885.00.

The highest value fixed by any witness for the government, it will be seen from the foregoing, was $3875 for parcel 106a.

The only other witness testifying as to the value of this tract, parcel 106a was the defendant E. J. Bloom, and his testimony as to the market value is as follows:

"Q. Directing your attention to the south half of section 33, I will ask you to state if you have an opinion as to the highest and most profitable use to which that land could be put? A. I do.

"Q. What in your opinion is the highest profitable use to which that land could be put, limit that now, to the northeast quarter of the southeast quarter of section 33? A. There is a deposit of limestone about three hundred feet wide extending into that part of section 33 which you described. The Washington Brick and Lime Company has been quarrying about thirteen hundred feet away, this has been used commercially for fifteen or twenty years and that continues into the described portion of section 33. Other than this lime pit there are other values contained there which other questions will bring out.

"Q. Disregarding the other values you mention and limiting the value, or rather limiting your answer to the value of this northeast quarter of the southeast quarter of section 33,—strike that please,—directing your attention only to the northeast quarter of the southeast quarter of section 33 being the forty acres in which you say there is a lime pit, will you state what in your opinion is the fair market value of that property when devoted to clearing or recovering this lime deposit?

"Mr. Casterlin: To which we object as the proper foundation is not laid.

"The Court: He may answer.
"Mr. Casterlin: Exception.
"A. $6000.00

"Q. Now, referring to the rest of that half section, exclusive of the portion which you have described and basing your answer upon its use as grazing and timber land,

have you an opinion as to its value for those purposes. My question is, have you an opinion as to the remaining portion of that half section for timber and grazing purposes?

"Mr. Casterlin: To which we object, the witness is not qualified to answer the question and the proper foundation is not laid, the proper limitation not put in the question. * * *

"Q. I will qualify my question by this further statement: The standard of market value is that value which a willing buyer and a willing seller can agree upon, its cash value that a willing buyer who is willing to buy and not compelled to, would pay, and a willing seller willing to sell and not compelled to, would accept.

"Mr. Casterlin: We renew our objection.

"The Court: The same ruling.

"A. Without considering anything that has taken place since, I think at the time I could have gotten ten dollars an acre for that land.

"Q. What is your opinion as to the fair market value of that land in September 1942, on September 19, 1942? A. About ten dollars an acre.

"Q. I direct your attention to the remaining portion; the southwest quarter of section 5 and the north half of section 8, do you know whether there was any clear tillable land on that tract in September 1942. A. I have independent recollection that there were two small clearings of five and eight acres each. The Government has made aerial photos of this area and have refused to release them; counsel for the Government might have them and if they have them I could identify them. I remember there were small tracts which had been occupied prior to my ownership. I don't think they exceeded five acres in section 5 and not more than eight acres in Section 8. * * *

"Q. Do you have any opinion as to the value of these two tracts that were clear and subject to cultivation, as of September 19, 1942? A. In the first place I didn't buy the lands for agricultural use, but exclusive of the use for which I bought it, I don't think any of the land was worth more than $7 to $10 an acre, with the possible exception of the eight acres and the five acres. Cleared tracts in this county has a so-called going value of about $20.00 an acre. I value that thirteen acres at $20.00 on these two sections.

"Q. That would be for agricultural purposes? A. Not in excess of $10.00 for the balance of the land. * * *

"Q. You gave a value of $6000.00 to the lime deposit in the south half of Section 33. Upon what do you base that, or upon what basis did you compute that? A. I am not in the lime business and I would want to lease it and I think the royalties in places of this kind is 3 cents a ton and I figure that there would be between one and two hundred thousand tons. It was on that basis that I fixed the value."

█ The Court has set forth the evidence of Mr. Bloom pertaining to the value of this tract 106a and it appears from an examination of it that it is not very satisfactory as far as opinion evidence is concerned as to the market value of the land on the date in question. He testified to the value of the northeast quarter of the southeast quarter of section 33 in reply to the question as hereinbefore set forth in full, fixing the value at $6000 for this forty acres. Over objection, the Court permitted the defendant to give this testimony. From an examination of this question as framed it is apparent that the witness was not given the definition of Fair market value and the time is not fixed. It is a well settled rule of law that "Compensation which must be paid the owner of property which is taken by eminent domain, is the fair market value of the property at the time of the taking." Brett v. United States, 9 Cir., 86 F.2d 305, 307, also see cases therein cited. Also the witness testified: "I am not in the lime business and I would want to lease it and I think the royalties in leases of this kind is 3 cents a ton and I figure there would be between one and two hundred thousand tons. It was on that basis I fixed the value." Also, as contended by the Government, the witness testified that he had never sold any lime from the property; that he had never developed the lime deposit and that he did not know the extent, the width or depth of the deposit on this unit.

It is apparent that the jury did not consider the $6000 value fixed for the forty acres in arriving at its verdict, and any error in admitting this testimony, it

can safely be said, did not prejudice the cause of the Government. The defendant further testified, after the date had been fixed as of September 19, 1942, and with a fairly good definition having been given the witness as to market value, that in his opinion the fair market value of the land was about $10 an acre. It is somewhat doubtful as to just what land he was referring to, but it is fair to say that he was referring to the balance of the land embraced in parcel 106a that was not included in the forty acres on which he had placed a value of $6000.

 "It is generally recognized that the opinion testimony of the owner of property, because of his relationship as owner, is competent and admissible on the question of the value of such property, regardless of his knowledge of property values. It is not necessary to show that he was acquainted with the market value of such property or that he is an expert on values. He is deemed qualified by reason of his relationship as owner to give estimates of the value of what he owns. The weight of such testimony is, of course, affected by his knowledge of the value." 20 American Jurisprudence Section 892 page 751.

"In addition, it is well settled that an owner who is familiar with property occupied by him or connected with and used in a business may testify concerning its value, although he is not an expert." Baltimore American Insurance Company v. Pecos Mercantile Co., 10 Cir., 122 F.2d 143, 147.

"The general test, that any one familiar with the values in question may testify, is liberally applied, and with few attempts to lay down detailed minor tests. The owner of an article, whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury." Hood v. Bekins Van & Storage Co., 178 Cal. 150, 172 P. 594, 595.

 It is also well stated in the Government Brief that:

"In condemnation proceedings, 'value' means 'market value' or 'fair market value.' These are synonymous terms and are so accepted by the Courts. United States v. Miller, 317 U.S. [369] 373, 374 [63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55].

"Value, market value or fair market value is the amount of cash, or cash and credit equivalent to cash, for which the property could be sold by an owner willing, but not obliged to sell, to a purchaser who desires, but is not obligated to buy, on the date of taking. Brett v. United States, 9 [Cir.] 86 F.2d 305, certiorari denied 301 U.S. 682 [57 S.Ct. 782, 81 L.Ed. 1340].

 "Elements affecting value that depend upon events or a combination of circumstances, which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration for that would be to allow mere speculation and conjecture to become the guide for ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth. Olson v. United States, 292 U.S. [246] 257 [54 S.Ct. 704, 78 L.Ed. 1236]; Washington Water Power Company v. United States, 9 [Cir.] 135 F.2d 541.

 "To warrant admission of testimony as to the value of land for purposes other than that to which it is being put at the time of the taking, it must first be shown;

"1. That the property is adaptable to the other use.

"2. That the other use is reasonably probable within the immediate future, or a reasonable time.

"3. That the market value of the land has been enhanced thereby. United States v. Foster [8 Cir.], 131 F.2d 3; Brett v. United States, supra; Washington Water Power Company v. United States supra.

 "Past profits and future profits are immaterial and incompetent evidence of value. United States v. Meyer [7 Cir.] 113 F.2d [387] 390 (syl. 34).

 "Frustration and appropriation are two different things. Payment for and evidence of frustration are not allowable. Payment for appropriation is allowable. Evidence of frustration is immaterial and incompetent in determining value. Mitchell v. United States, 267 U.S. 341 [45 S.Ct. 293, 69 L.Ed. 644].

 "Special adaptability of property to the owner's use must be disregarded in

arriving at a fair market value. United States v. Miller, 317 U.S. 375 [63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55].

"The owner of property is entitled to give his opinion of value. Value is a definite term defined as above set out. 20 Am.Jur. p. 751.

 "Witnesses may refer to sales or leases of land of similar kind and quality within the neighborhood and within a reasonable time before the taking, not as a standard of value, but as things within knowledge contributing to their opinion. Atlantic Coast Line R. Co. v. United States [5 Cir.] 132 F.2d 959; Welch v. Tennessee Valley, etc. [6 Cir.], 108 F.2d 95.

"Where actual sales cannot be used as a basis for ascertaining market value, appraisals are made and the jury decides from these appraisals and other evidence what the market value is. Washington Water Power Company v. United States, supra."

 'Opinion testimony as to the market value may be given by expert witnesses. The opinion of such witnesses is admitted in evidence in cases where the value of property such as owned by the defendant in this case involved here, is an issue. It is admissible when the witness is one who has sufficient knowledge concerning the matter acquired by study, training and observation or experience to permit him to give his opinion. However, where the testimony of such witness is as to anything that can be observed and seen by any other witness, his testimony is to be viewed as that of any other witness, giving consideration to any particular training and experience he may have as to any bearing it may have on any increased accuracy on his part over that of a person of ordinary experience. The jury is not bound by any opinion testimony and it should be, and is to be considered by them in connection with all the other evidence and should be given such weight as they believe it to be entitled to receive. In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in the sale of property between private parties. The inquiry in such cases must be, what is the property worth in the open market, viewed not merely with reference to the use to which it is at the time applied, but with reference to the uses to which it is reasonably adapted. The owner of property is entitled to "just compensation" for this taking and "just compensation" includes all elements of value that inhere in the property. It does not exceed however, the full, fair cash market value or its equivalent, of the property at the time of its taking fairly and conscientiously arrived at. In considering this question it is not a matter of what the property taken would have been worth to the owners if they had retained the property, because it might have possessed greater value to them than it had upon the open market. In other words, the question is, if they had desired to sell the property taken from them, what could they have obtained in cash, or its equivalent, on the open market on September 19, 1942, at the time of taking, being allowed a reasonable time to find a purchaser who was buying with the knowledge of all the uses and purposes to which the property was adaptable. The law has no accurate standard by which that amount can be ascertained, much must be left to the sound judgment and common sense of a conscientious jury, and in exercising that judgment the jury has the right to take into consideration all the facts and circumstances in evidence which people who are buying and selling lands would have taken into consideration in private negotiations for the sale of such lands, both facts and circumstances which would tend to bear down the price and the facts and circumstances which would tend to stimulate the price. In fact, it has been well said that so many and varied are the circumstances to be taken into account in determining the market value of the various kinds of property condemned for public use that it is impossible to formulate an exact rule to govern its appraisal in all cases. In general the most profitable use for which the property was adaptable and needed, or likely to be needed in the reasonably near future, on the date of taking, is to be considered, not necessarily as a measure of value but to the extent that the possible demand for such use affected the market value, and the jury should take into consideration all of the uses for which the property was reasonably and practically suitable and adaptable, including the highest and most profitable use, or such use as on the date of taking might reasonably be expected in the reasonably near future. Its reasonable availability for uses which

are of such character as to be reflected in the market value of the property at the time of taking should be taken into consideration in determining the fair market value of the property and the "just compensation" to the owner.

In the instant case the defendant Bloom testified at length as to the possibilities of the land in question to him as a mining man. It had great possibilities. He visioned a gold property of extensive proportions. He conceived the idea that a river channel extended through this land and of gold being in the channel and he acquired large tracts of land for six or eight miles along this channel of which parts of this parcel 106a were a part.

He intended to install a bucket line gold dredge for the purpose of removing the gold from this land. He made a careful study of a geological formation. If he had been permitted to continue with his work and the Government had not required this land for public use the result of his efforts, of course, would have been entirely speculative.

**▆** However, while the rule prohibits consideration of this as testing the market value, it is admissible if it would be considered by a prospective vendor or purchaser or would tend to enhance the value of the property. "The character, location, and physical condition of the real estate, and the use to which it is put, may be placed before the jury, and evidence is admissible to show any probable use to which the land could reasonably be put * * *. However, speculative or remote ways in which the land could be used cannot be considered in determining its value." 31 Corpus Juris Secundum, Evidence, § 182, page 884.

The witnesses for the Government ignored the mining possibilities of this land in their testimony. In fact they gave no consideration at all to whether it was mining property or not. They confined their testimony to its value for grazing and agricultural purposes, and the defendant Bloom in addition to the testimony as to its value for mining purposes fixed the value of about $10.00 an acre to the balance of this tract 106a.

**▆** The objection to the mining value as placed in evidence should have been sustained by the Court, and the testimony as a whole is somewhat unsatisfactory, which is often true in cases of this kind in fixing the market value of the land in question. The jury however, as I said heretofore, ignored the mining value and fixed the value of parcel 106a at $2775 less than the $10 an acre value placed upon it by the defendant Bloom and about $1100 more than the highest value placed upon it by the Government witnesses. The jury was fully instructed as to the law as hereinbefore set out in this opinion, and it appears to the Court that the amount fixed as to parcel 106a, in view of the testimony, was eminently fair to the Government.

We find a more serious condition as to the other parcels. As to parcel 106b, M. E. Thompson being duly qualified as an expert fixed the value at $45.

F. W. Fitts being duly qualified as an expert fixed the value at $42.

A. L. Gridley being duly qualified as an expert fixed the value at $9.25. There was no further testimony. The verdict should not be for an amount in excess of that shown by the evidence. There was no evidence that would justify the jury in bringing in a verdict in excess of $45.

As to parcel 116, M. E. Thompson being duly qualified as an expert fixed the market value at $1645. F. W. Fitts being duly qualified as an expert fixed the market value at $925 and A. L. Gridley being duly qualified as an expert fixed the value at $940. Neither Edward J. Bloom nor any other witness for the defendant has given their opinion as to the market value of this parcel of property, and the evidence will not sustain a verdict in excess of $1645.

**▆** While there is substantial evidence to establish the amount fixed by the jury for parcel 106a, the evidence fails in the amounts specified for units 106b and 116, and it appears that the verdict is excessive under the clear weight of the evidence. The verdict is for a total of $10,000. The evidence would support a verdict in the sum of $6665 for the entire tract, and although the verdict should be sustained as to 106a, in view of the fact that the matter should be re-examined as to the value of 106b and 116, the defendant should be given an opportunity to correct the error in his testimony as to the value of the land for mining purposes which the Court has heretofore held was objectionable. A new trial should be had as to the entire case providing

that the plaintiff is not willing to accept the amount of $6665 which would be supported by the evidence before the jury.

If the defendant accepts in writing, within twenty days from the date hereof, the amount of $6665, a new trial will be denied, otherwise the motion of the plaintiff for a new trial will be granted.

At the expiration of twenty days an order will be entered to conform with the views expressed in this opinion.