Mr. Justice' Washington
delivered the opinion of *595 the court.- ' This is an appeal from a decree of the cir-cuit court for the district of Kentucky, made in a suit ■in chancery, instituted by the appellee against the ap •pellants, ■whereby the latter were decreed to convey to the former certaift parts of a tract of land, granted to them,by the .commonwealth of Virginia, to which the ^appellee claimed title, under a junior patent, founded on a prior warrant and survey.
The warrant ‘to William Sutherland, (under whom the appel.lee claims,) bears date the 24th of January, 1774, and was issued by the governor of Virginia, by virtue of the proclamation-of the king of Great Britain, •of 1763. Under this* warrant, one thousand acres of land, lying in Fincastle county, on the south side pf the Ohio river, was surveyed on the 4th day of May, 1774, by Hancock Taylor, deputy surveyor of that county, and a grant issued for the same, by the com^ monwealth'of Virginia, to the said William Sutherland bearing, date the 5th of August 1788. The appellee derives his title as devisee under the will of his father, William Radford, to whom the said tract of land was' conveyed, by William Sutherland, on the 13th of February 1799.
The appellants claim parts of the, aforesaid tract of land, under entries made upon treasury warrants, in the year, 1780, which were surveyed in 1785, and patented prior to the 26th of May., 1788.
It ,is admitted by the parties, 1. That William Sutherland was a native subject of the king of Great Britain, and that he left Virginia, prior to the year 1776, .and has never since returned to .the United *596 States. 2d3y. That'Hancock Taylorwas killed «by the' Indians in 1774, and that he never did return the surveys made by him to the office of Preston, the principal surveyor of Fineastle county, but that A. Hemptonstrall one of the company, took possession of his field notes,' after his déath, and lodged them in Preston’s office; and that it was Taylor’s usual practice to mark all the corners, of his.surveys.
The correctness of the decree made in this causé is objected to on various grounds.
1st. Because it does not appear that .Hancock Taylor had in his possession, or under his. control, a warrant, authorizing him to execute this survey for William Sutherland'.
2d. Because there is not only an ábsence of all evidence to prove that the survey,.fo.r Sutherland, «was made and completed on the ground, but-that it appears,-from tjhe evidence of'Hemptonstrall, that no such survey was actually made. This witness states, that he attended Hancock Taylor; on this survey as a marker, and sometimes as a chain carrier. He proves the beginning corner, and the five first lines of the survey ending at four chesnut*trees, the mark óf which 'lines were plainly discernable when this tract was surveyed under an ordér of the circuit court made, in this cause. But he adds, that the subsequent lines of the survey were not run; and the. surveyor who.executed the order of the circuit court reports, that he met with no marked: line, or corner trees, after he left the four chesn.uts.
3d. It.is objected, in the third place, that the sur *597 rey, not having been'completed by the deputy survey- or, the court ought to infer that the lines actually run were- merely experimental.; arid, in such a case, it is contended, that'the principal surveyor could not make, and certify a plat of the survey on which a grant .could legally be founded.
It appears to the court, that these objections were fully examined and overruled in the case of Taylor and Quarles v. Brown, 5 Cranch, 234.
It Was there, decided, 1. That if in pc.nt of law, the warrant must be lodged in' the office of the surveyor at the time when the survey is made, his certificate, which states that the survey was made by virtue of the governor’s warrant, and agreeably to his majesty’s rnyal proclamation of 1.763, is sufficient evidence that the warrant was in his possession at that time. In this case the warrant, under which Sutherland’s» survey was made, is described in the certificate with sufficient certainty-fo■ nroye .that the officer in making--the survey acted under its authority. 2. It was decided that' the 6th section of the act of Virginia, passed in the ye.ar 1748, entitled, “ an act directing the duty of surveyors of lands,” upon which the second obiection made in 1hnt case, and in this, is founded, is merely directory to the nffirer. and that if does not inake the validity of the survey to denend upon the conformity bf the officer-to its requisitions. This consrrucuon of the above section appears to the. court to he perfectly well founded. The ownfcr -of the warrant has no pouter to control the conduct of the surveyor, whose duty it is to execute it, and’ it would .therefore be • unreasonable to deprive him ■ of *598 the title which the warrant confers upon, him, on account of the ' subsequent, neglect of that officer. I . the .omission of the surveyor to “ see the land plainly bounded ,by natural. bounds or marked trees,” which the law imposes upon him as a duty, cannot af? feet the title of the warrant holder,, it Would follow that his omission Jo run all the lihes of the survey on the ground, which the’law does not in express 'terms require' him to do', ought not. to ■ produce Jhat effect. If the surveyor, by running some of tbe.lines? and from adjoining surveys, natural boundaries,,or his personal knowledge of the ground, is enabled to protract thé. remaining linqs, so as to close the survey, no subseqtrent locator Can impeach the title founded upon such survey, upon the ground that all the lines were not run arid marked. The legislature may undoubtedly declare all such surveys to be void ; but no statute .to this effect was in force in Virginia at the time when this- survey .was made.
3. The third objection made to this decree appears to be substantially removed by the opinion of this court-on the third point.in the cáse above referred to. If was there decided that the survey, though in fact made by the deputy surveyor, was in point of law to be considered as made by the principal, and, consequeritly, that his signature to the plat and certificate was a sufficient . authentication of the suryey to entitle the person claiming under it to a grant.
As to the distinction taken at the bar'between that case and this, upon the ground that in this the sur- . vey was merely experimental, and was not intended to be made in execution of the warrant, there is cer *599 t&iniy nothing in it. It is by acts that the intention of men, in. the absence o.f positive declarations, can , best be discovered. The survey made by Taylor was adopted by .the principal surveyor, as one actually done in execution , of the warrant to Sutherland,, and it would be too much for this; or any other court, to presume that a contrary intention prevailed in the mind eith'er-of'the' principal or deputy surveyor^ and on that supposition .to pronounce the survey invalid.
The last objection made to this decree is, that as a" British subject, Wm. Sutherland could not take a legal title to this land under the state of Virginia, and,consequently, that the grant to him in 1788 was void,arid was not protected'by. the treaty of 1794, between the United States and Great Britain.
The decision of this court in the case of Fairfax’s devisee v. Hunter’s lessee, (7 Cranch, 603.) affords a full answer to this objection- ■ In that case .the will of Lord Fairfax took effect in the year 1781, during the war, and Denny Martin, the 'devisee/ under that will, was found to be a native born British subject, who had never become a citizen of any. of the United States, but had always resided ' in England..
■ It was ruled in that case, 1st. . That although the devisee.was an cm alien enemy at the time of the testa^ tor’s death, yet_he took an estate in fee under the will, which could npt, on the ground of alienage, be devested but by inquest of office, or by some legislative - act equivalent thereto. 2d„ That the defeasible title thus vested i-n. the alien devisee was complete *600 ly protected and confirmed.by the ninth article ot treaty of 1794.
These principles are decisive of the objection now under consideration. In that cuse,.as in this,, the lei gal title vested in the alien by purchase during the war, and was not devested by any act of Virginia, pri- or to the treaty o£1794, which rendered their estates absolute and indefeasible.
Decree affirmed with costs.