(127 App. Div. 515.)

TRUST COMPANY OF AMERICA v. HAMILTON BANK OF NEW YORK CITY.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

1. PAYMENTS—MISTAKE OF FACT—RECOVERY.
    The general rule is that payments made under a mistake of fact, though negligently made, may be recovered.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Payment, §§ 272–281.]

2. BILLS AND NOTES—PAYMENT OF FORGED BILL OF EXCHANGE—RECOVERY.
    A drawee of a bill of exchange, to which the drawer's name has been forged, who accepts or pays the same, can neither repudiate the acceptance nor recover the money paid; he being bound to know the drawer's signature.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, § 1272.]

3. SAME.
    Where the indorsement of the payee of a bill of exchange has been forged, subsequent holders obtain no title to it, and payments made to one who holds under such forged indorsement may be recovered.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, § 1273.]

4. BANKS AND BANKING—FORGED CHECKS—PAYMENT—RIGHTS OF BANK—RECOVERY OF PAYMENTS—"FICTITIOUS."
    Negotiable Instruments Law, Laws 1897, p. 724, c. 612, § 28, provides that an instrument is payable to bearer when it is payable to the order of a fictitious person and such fact was known to the person making it so payable. The name of the maker of checks purporting to have been signed by an administrator, made payable to beneficiaries entitled to a greater amount from the estate than the amount of the checks, was forged. The checks were accepted and paid by the drawee. The names of the payees were also forged. It did not appear who forged the maker's name, but the person who did so knew that the payees would never have any interest in the instruments. Held, that the payees were fictitious within the statute, and the drawee could not recover the money paid.
    [Ed. Note.—For other definitions, see Words and Phrases, vol. 3, p. 2754.]

5. SAME—FORGED CHECK—PAYMENT—LIABILITY TO DEPOSITOR.

Where a party forging a check was a stranger to the drawee and the person receiving the money on the check, and they were equally innocent, the drawee must stand the loss, for the risk of paying out money on a forged signature of a depositor is one a banker must assume.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 441.]

Submission of controversy under Code Civ. Proc. § 1279, by the Trust Company of America and the Hamilton Bank of New York City. Judgment for defendant.

Argued before INGRAHAM, CLARKE, SCOTT, McLAUGHLIN, and HOUGHTON, JJ.

Albert B. Boardman, for plaintiff.

Herman Aaron, for defendant.

McLAUGHLIN, J. This is a controversy submitted to the court upon an agreed statement of facts under section 1279 of the Code of Civil Procedure. The controversy relates to four checks for $500 each, drawn upon the plaintiff, a trust company doing a banking business, and signed: "Estate of Kate M. Wallace. Arthur B. Wallace, Adm'r." At the time the checks were presented to the plaintiff for payment, the estate of Kate M. Wallace was one of its depositors, having to its credit an amount in excess of all the checks, which could be drawn out on checks signed by Arthur B. Wallace, administrator, when countersigned by the United States Fidelity & Guaranty Company. The Wallace estate had then been practically settled, and the amount on deposit was ready for distribution among the next of kin of the decedent. The four checks in question were drawn without the knowledge or authority of the administrator, his signature being forged, and in each there was inserted as payee the name of some one of the next of kin whose distributable share of the amount on deposit with the plaintiff was greater than the amount of the check or checks thus apparently payable to such person. The first check was dated September 25, 1905, and was presented on that day to the United States Fidelity & Guaranty Company by a person unnamed, without the knowledge of plaintiff or defendant. The United States Fidelity & Guaranty Company, relying upon the apparent genuineness of the check, countersigned the same, and it was then, by some person unknown, presented to the plaintiff for acceptance and by it accepted, in writing. The name of the payee was then forged upon the back of the check as first indorser, and it was subsequently deposited with the defendant, by one M. F. Kerby, one of its depositors, who was given credit for the same. It then bore the following additional indorsements: "Harvey J. Conkey. M. F. Kerby. A. Edward Fisher." Thereafter, the defendant, through the New York Clearing House, presented the check to the plaintiff for payment, guaranteeing the indorsements, and it, relying upon the genuineness of the check, with the guarantee of the defendant thereon, not knowing that the indorsement of the payee was forged, paid the same in good faith. Substantially the same facts are true in regard to the second check, which was dated in November, 1905. The other two checks, dated

in December, 1905, and January, 1906, were not presented to plaintiff for acceptance before payment and were deposited with defendant by Harvey J. Conkey, one of its depositors, to the credit of his account; otherwise, the same course was pursued with regard to them. They were indorsed "Harvey J. Conkey" below the forged indorsement of the payee.

Upon discovering the forgeries, the plaintiff at once notified the defendant, tendered back the checks, and demanded repayment. In the meantime both Kerby and Conkey had withdrawn the proceeds of the checks, and the defendant, relying on plaintiff's acceptance and payment of them, had paid out the same in good faith. The defendant has refused to repay plaintiff the amount of the checks, or any of them, and the question presented is whether plaintiff is entitled thereto.

The general rule is that payments made under a mistake of fact may be recovered, although negligently made; but it is also settled that, if the drawee of a bill of exchange to which the drawer's name has been forged accepts or pays the same, he can neither repudiate the acceptance nor recover the money paid, since he is bound to know the drawer's signature. Price v. Neal, 3 Burrows, 1354; Bank of United States v. Bank of Georgia, 10 Wheat. (U. S.) 333, 6 L. Ed. 334; National Park Bank v. Ninth National Bank, 46 N. Y. 77; Goddard v. The Merchants' Bank, 4 N. Y. 147. It is also settled that, where the indorsement of the payee of a bill of exchange has been forged, subsequent holders obtain no title to it, and payments made to one who holds under such forged indorsements may be recovered. Corn Exchange Bank v. Nassau Bank, 91 N. Y. 74, 43 Am. Rep. 655; Holt v. Ross, 54 N. Y. 472, 13 Am. Rep. 615; Canal Bank v. Bank of Albany, 1 Hill, 287.

Therefore, if all the indorsements on the checks in question had been genuine, the plaintiff could not recover; but if the maker's signatures had been genuine, and only the indorsements or any of them forged, it could recover. Having paid the checks, the plaintiff cannot now be heard to say that the maker's signatures are not genuine, or recover on the ground that the same were forged, and by reason of that fact it is suggested that the rights of the parties are precisely the same as though the drawer's signatures were genuine, and since the defendant never obtained good title to them, on account of the forged indorsements of the payees, the plaintiff is entitled to recover. There are authorities to support this contention. First Nat. Bank v. Northwestern Bank, 152 Ill. 296, 38 N. E. 739, 26 L. R. A. 289, 43 Am. St. Rep. 247; McCall v. Croning, 3 La. Ann. 409, 48 Am. Dec. 454. But it does not necessarily follow, because the checks were not indorsed by the persons whose names appeared on them as payees, that the defendant, which received them in good faith and paid value therefor, can be compelled to repay their amounts to the plaintiff.

A leading authority on the subject is Bank of England v. Vagliano Bros., L. R. 1891 App. Cas. 107, which reversed Vagliano v. Bank of England, 23 Q. B. D. 243, and 22 Q. B. D. 103. This authority has been frequently cited and is directly in point. There, Vagliano Bros. were foreign bankers doing a large business in various parts of the world. One of their clerks, Glyka, forged a large number of bills

of exchange purporting to be drawn on the firm by one of its foreign correspondents, payable to another well-known firm. He also forged letters of advice to accompany them and caused them to be presented, the same as genuine bills, to Vagliano Bros. in the regular course of business. Vagliano Bros., deceived by the cleverness of the forgeries, accepted from time to time bills aggregating over $350,000, which they directed the Bank of England, their general banker, to pay when presented. After bills had been accepted, Glyka would obtain pos· session of them, indorse thereon the name of the payee, and collect the money from the bank, which charged the amounts so paid to the account of Vagliano Bros. The latter, on discovering the forgeries, sued the bank to recover the amounts so paid out on the forged bills. The House of Lords held, reversing the decisions of the lower courts, that this amount could not be recovered. The decision is placed upon the ground that "since Glyka, although he inserted in the forged bills as payee the name of a well-known firm, knew that such firm had no interest in the bills and never intended that it should, the payee was fictitious," and under the statute providing that "where the payee is a fictitious or non-existing person the bill may be treated as payable to bearer" (Bills of Exchange Act 1882, § 7, subsec. 3), the bills of exchange were, in legal effect, payable to bearer, and the bank obtained good title, regardless of the indorsements.

Some doubt was expressed in the Bank of England Case as to whether the statute warranted such construction, since the effect was to make the fictitiousness of the payee depend upon the maker's intention; but under our own statute no such question can be raised. The Negotiable Instruments Law provides (Laws 1897, p. 724, c. 612, § 28):

"The instrument is payable to bearer: * * * (3) When it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable."

The correctness of the decision in First National Bank v. Northwestern Bank, supra, may well be questioned, since the decision of the lower court, which was reversed by the House of Lords, in the Bank of England Case, was cited at length and relied upon. Whether this be so or not, the decisions in our own state are entirely in harmony. with the views expressed by the House of Lords. Thus, in Coggill v. American Exchange Bank, 1 N. Y. 113, 49 Am. Dec. 310, a partner drew a bill of exchange in the name of the partnership, payable to one Truman Billings and forged thereon the indorsement of the latter. The bill subsequently came into the hands of the defendant bank, and the plaintiff, upon whom it was drawn, accepted and paid it. It was held that the plaintiff, on discovering the forgery, could not recover the amount paid from the defendant, since the bill was in effect payable to bearer, and defendant had good title. Mr. Justice Bronson, who delivered the opinion of the court, distinguished the case of Canal Bank v. Bank of Albany, supra, and said:

"As the payee had no interest, and it was not intended that he should ever become a party to the transaction, he may be regarded, in relation to this matter, as a nonentity: and it is fully settled that when a man draws and puts into circulation a bill which is payable to a fictitious person, the holder may

declare and recover upon it as a bill payable to bearer. * * * In legal effect, though not in form, the bill is payable to bearer. * * * The plaintiff probably accepted and paid the bill under the mistaken assumption that the indorsement was genuine; but he was not mistaken about the main fact which he was concerned to know, which was that the holder was the owner of the bill."

And in Phillips v. Mercantile National Bank, 140 N. Y. 556, 35 N. E. 982, 23 L. R. A. 584, 37 Am. St. Rep. 596, the cashier of the National Bank of Sumter, S. C., drew checks in the name of the bank, inserting as payees the names of customers of the bank, whose indorsements he forged. The checks thus drawn were sent to various firms in New York and subsequently came into the hands of the defendant, which received them in good faith and charged them to the account of the Sumter Bank. The receiver of the Sumter Bank thereafter brought an action to recover the amount of these checks, and it was held that the same could not be maintained, since in legal effect the payees were fictitious and the checks payable to bearer, and for that reason the defendant obtained good title. The court, Mr. Justice Gray delivering the opinion, said:

"The names he used were, for his purposes, fictitious, because he never intended that the paper should reach the persons whose names were upon them. The transaction was one solely for the fraudulent purpose of appropriating his bank's moneys, by a trick which his position enabled him to perform. Concededly, if the names of the payees were of fictitious persons, the Sumter Bank would have had no claim upon the defendant. How, then, can the transaction be said to assume a different aspect because the names adopted were of known persons? That the intention was to treat them as being of fictitious persons is manifest. * * * The fictitiousness of the maker's direction to pay does not depend upon the identification of the name of the payee with some existent person, but upon the intention underlying the act of the maker in inserting the name."

Under the negotiable instruments law and the cases cited, I am of the opinion the checks in question, as between plaintiff and defendant, were payable to bearer. It does not appear who forged the maker's signatures, but the subsequent history of the checks does not leave it open to doubt that the person who did so knew that the parties whose names were used as payees would never have any interest in the instruments. Just as in the Bank of England and the Phillips Cases, in order to accomplish the fraud more easily, the names inserted as payees were those of persons to whom checks might naturally be made. Whether indorsing the names of the payees upon the checks was technically forgery or not it is unnecessary to consider. It has been convenient to thus describe them. Despite these forged indorsements, then, the defendant acquired good title, since in legal effect the checks were payable to bearer. Plaintiff, having paid them to a holder in due course, cannot recover upon the ground that the payees' signatures were forged.

Nor is this view at all in conflict with Shipman v. Bank of State of New York, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821. There, the plaintiffs' firm signed a large number of checks relying on the false statements of an employé; the names of the payees being in some instances fictitious and in others the names of existing persons. The employé upon whose false statements the

checks were made then indorsed upon them the names of the respective payees, and the checks were thereafter paid in good faith by the bank upon which they were drawn. The court held that the plaintiffs could recover from the bank the amount paid, distinguishing the Bank of England Case, and the distinction is obvious. In the former case, the member of the firm who signed the checks in the firm name believed that in every instance the payee was a real person to whom alone the check was payable, while, in the latter case, the person who wrote the maker's signature was a forger who knew that, so far as the bills of exchange were concerned, the payee was fictitious. The court expressly recognized the rule that the maker's intention was controlling, saying:

"The maker's intention is the controlling consideration which determines the character of such paper."

It is true that in many of the authorities cited the person guilty of the fraud was connected in some way with one of the parties, which may have affected the equities of the case, as was suggested in Shipman v. Bank of State of New York, supra, concerning the decision in the Bank of England Case, while here, so far as appears, the guilty party was a stranger to both plaintiff and defendant, and they are equally innocent. But that cannot change the law as to the fictitiousness of the payees, and, if it did, I am of the opinion that any equities in the present case are with the defendant. The risk of paying out money upon a forged signature of a depositor is one which a banker must assume, and, if the plaintiff had detected the forgeries when the checks were presented for payment, it would not have suffered any loss, and it is possible that the defendant would not.

I am of the opinion that the plaintiff has no legal claim against the defendant, and for that reason the latter is entitled to judgment upon the merits, with costs. All concur.