### UNITED STATES v. CHASE NAT. BANK.

(District Court, S. D. New York. April 21, 1917.)

1. BILLS AND NOTES ☞1—NATURE OF BILL—COMPLETION.

A bill made in the form of a check, even if valid, is incomplete, and not commercial paper at all, until it has been indorsed and delivered to some person other than the drawer.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1.]

2. BILLS AND NOTES ☞434—FORGED BILLS—LIABILITY.

An army officer, detailed to the quartermaster's department, and authorized to draw upon funds placed by the Treasury Department of the United States at his disposal, was assisted by a sergeant. While the officer was temporarily absent upon leave, the sergeant took one of the regulation drafts of the Treasury Department, filled it in to the order of the officer, and forged the latter's name as drawer. Having forged the indorsement of the officer's name in blank, he cashed the check over the counter of a bank, which indorsed the check to defendant, which received payment from the Treasury Department. The forgery being discovered, suit was instituted against defendant to obtain a refund of the amount so paid. Held that, as the check was ineffective as commercial paper until indorsement of the name of the drawee, who was also the drawer, and as any holder may fill a genuine bill with the names of others and forge their indorsements, without affecting his rights or the drawee's obligation, the United States cannot recover from defendant the amount paid on the bill.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1268–1274.]

At Law. Action by the United States against the Chase National Bank. Verdict directed for defendant.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This is an action at law to recover from the defendant, a bank, the amount of a check or sight draft drawn under the following circumstances: Lieutenant Sumner was an officer in the United States army, detailed to the Quartermaster's Department and authorized as such to draw upon funds placed by the Treasury Department at his disposal. One Howard, a sergeant in the Quartermaster's Department, had been detailed to assist Sumner for some time past, and had learned his method of availing himself of these funds. While Sumner was temporarily away upon leave, Howard took one of the regulation drafts of the Treasury Department, filled it to the order of Sumner, and forged Sumner's name as drawer. Having then forged the indorsement of Sumner's name in blank, he cashed the check over the counter of the Howard National Bank of Vermont. This bank indorsed the check to the defendant, which upon delivery presented it to the Treasurer of the United States, who paid it. Howard's forgery was soon discovered, and the plaintiff thereupon sued the defendant to obtain a refund of the amount so paid. Other circumstances are admitted by the stipulation under which the cause was tried, but they are relevant only upon the question of the negligence of the several parties, and as such do not require statement here.

Joseph A. Burdeau, of New York City, for the United States.
Henry Root Stern, of New York City, for defendant.

LEARNED HAND, District Judge (after stating the facts as above). No one disputes since Price v. Neal, 3 Burr. 1354, that a drawee may not recover money paid upon paper forged by the drawer; on the other hand, no one disputes that, if the bill be once lawfully signed and uttered, no innocent holder may collect the bill with a forged indorsement and retain the proceeds. The question at bar presents the case where the forger not only forges the putative drawer's name, but makes the bill payable to the drawer and then forges the indorsement as well.

[1] A bill made in the form of this check, even if valid, is incomplete, and not commercial paper at all, until it has been indorsed and delivered to some person other than the drawer. Until then it is in form only an order to pay to the maker, and no obligation can arise between the maker as maker and himself as payee. This, after some confusion, was decided in the case of notes (Wood v. Harper, 2 Exch. 13; Brown v. De Winter, 6 C. B. 336), and is now unquestioned law (Moses v. Lawrence County Bank, 149 U. S. 298, 13 Sup. Ct. 900, 37 L. Ed. 743; Negotiable Instruments Law [Consol. Laws N. Y. c. 38] § 320). It is so obvious as not to justify expatiation; and the same reasoning applies to bills.

[2] Therefore, until Howard indorsed Sumner's name, the check did not, even on its face, exist as a legal instrument, any more than an undelivered deed; its factum was in abeyance. When he did indorse it in blank and deliver it to the Vermont bank, it was an order to pay the sum to bearer. The drawer's name was forged, but the two added forgeries of the same name were of no more significance than if the forger had signed Sumner's name three times as drawer. The rule is, however, not confined to cases where the paper is payable to drawer or maker. It is generally held that, if the drawer selects as payee the name of even a real person, and forges, not only the drawer's name, but the payee's, a presenting holder may keep the proceeds. Phillips v. Mercantile National Bank, 140 N. Y. 556, 35 N. E. 982,

23 L. R. A. 584, 37 Am. St. Rep. 596; Bartlett v. First National Bank, 247 Ill. 490, 93 N. E. 337; Snyder v. Corn Exchange National Bank, 221 Pa. 599, 70 Atl. 876, 128 Am. St. Rep. 780; Coggill v. American Exchange Bank, 1 N. Y. 113, 49 Am. Dec. 310; Trust Company v. Hamilton Bank, 127 App. Div. 515, 112 N. Y. Supp. 84. National Bank of Commerce v. United States, 224 Fed. 679, p. 681, 140 C. C. A. 219, though at first blush it seems to be an exception, in fact went off on another point, and recognizes the general rule.

It is true that the decisions are not unanimous (First National Bank v. N. Y. Bank, 152 Ill. 296, 38 N. E. 739, 26 L. R. A. 289, 43 Am. St. Rep. 247; McCall v. Corning, 3 La. Ann. 409, 48 Am. Dec. 454), and it takes only slight evidence of participation to defeat the holder (Bank of Danvers v. Bank of Salem, 151 Mass. 280, 24 N. E. 44, 21 Am. St. Rep. 450); but it is none the less true that, where the foregoing facts are baldly presented, the better considered cases protect the presenting holder. Yet, when the forger draws a note to the name of a payee, either real or fictitious, and the drawee or maker accepts it, supposing the name to be real, no subsequent negotiation of it by the forger gives a valid title, and, if the drawee pays, he may recover. Shipman v. Bank of N. Y., 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821; Seaboard Bank v. Bank of America, 193 N. Y. 26, 85 N. E. 829, 22 L. R. A. (N. S.) 499; Jordan Marsh & Co. v. Bank, 201 Mass. 397, 87 N. E. 740, 22 L. R. A. (N. S.) 250; Tolman v. American National Bank, 22 R. I. 462, 48 Atl. 480, 52 L. R. A. 877, 84 Am. St. Rep. 850. These last cases are not contrary in principle; they depend upon the fact that the drawee or maker has intended as payee a person other than the forger. If the maker really intends to make the forger payee, even under a false name, his indorsement is good. Robertson v. Coleman, 141 Mass. 231, 4 N. E. 619, 55 Am. Rep. 471. It is quite true that Bank of England v. Vagliano, [1891] App. Cas. 107, does not accord with these cases, and with deference it is doubtful whether the judgments of Lord Bowen below and Lords Bramwell and Field above are not to be preferred, where the matter is still open. The effect of the decision was indeed to compel Vagliano to pay to the order of Glyka, the clerk, when he had agreed only to pay to the order of Petridi & Co. Moreover, the result of the decision has been hardly more than to add to section 28 a clause which had been supposed to be already a part of the common law. The case in any event has nothing to do with that now at bar.

Price v. Neal, supra, has been a source of much difference of opinion. Lord Mansfield's principle that the loss should fall where it chances, while often commended (the doctrine of Price v. Neal, 4 How. L. R. 297), has not escaped question. It must be confessed that it is hard upon that theory to explain the uniform recovery where a valid bill has been stolen and forged and the presenting holder has innocently collected the money. The usual explanation is that, having converted the bill, the holder has been guilty of a wrong at law, and is not equally innocent with the drawee; but surely that is a conventional distinction, not properly applicable to an action supposed to turn upon natural justice. Moreover, it is difficult to see why the

drawee is not as much of a converter as the presenting holder. He has as little right to meddle with the property of the actual holder as the presenting holder, and his putative payment is no payment at all. Such difficulties may best be left till they arise, because in the case at bar, there was neither an actual bill nor a genuine holder. As the bill was a forgery, and created no obligation, it could make not the slightest difference to the drawee what indorsements it bore, or whether or not they were genuine. The bill, being void, could never be presented by the true owner, assuming the payee ever became its true owner. Now, in the case of a genuine bill stolen and forged, the wrong done the drawee, who pays on the forged indorsement, is only that he must pay again, a wrong which cannot arise when the bill is a forgery. Hence the forgery of the indorsement was wholly irrelevant, even if the bill had been stolen from the actual payee.

But the bill never had been delivered, and if it had been genuine the forgery would have been equally irrelevant. Any holder or the drawer might fill a genuine bill with the names of distinguished persons, and forge their indorsements, without affecting his rights or the drawee's obligation, because the drawee looks only to the drawer, and to the title of the holder from the person to whom or for whom the drawer actually first delivered the bill. The actual holder may pass his actual title by any name that he has been called in the bill, and he may add any indorsements to real persons whom he may choose, if he avoids delivery to them. It is not to be thought that the secret purpose of any holder in indorsing the name of a person not a holder is an exception to the universal rule that secret intent is never material. The explanation is that as respects the drawee all such indorsements are not part of the contract, since a drawee cannot hold indorsers, and needs only an authentic drawer and his true appointee by order, however named.

From no aspect can those cases be supported which treat the forgery of the payee's name as relevant. Indeed, from the report in Burrows it seems likely that, in Price v. Neal, Lee, the forger, forged the indorsements along with the bill itself.

A verdict will be directed for the defendant.