HARTFORD ACCIDENT AND INDEMNITY COMPANY, Plaintiff, *v.* THE
FIRST NATIONAL BANK AND TRUST COMPANY OF HUDSON, Appel-
lant, Impleaded with FARMERS NATIONAL BANK, HUDSON, N. Y.,
Respondent, and MERLON J. WHITE, Defendant.*

Third Department, January 11, 1939.

*Coffin, Coffin & Inman* [*George C. Inman* of counsel], for the appellant.

*Ainsworth & Sullivan* [*Charles B. Sullivan* of counsel; *Warner M. Bouck* with him on the brief], for the respondent.

HILL, P. J.   Appeal from an order denying the motion of defendant, The First National Bank and Trust Company of Hudson, N. Y., for a summary judgment against Farmers National Bank of Hudson, impleaded as a defendant on the First National's motion.

The action was brought by plaintiff as subrogee under its policy, which insured the Hudson City Savings Institution against loss through forgery, for $5,000 damages and $71.50 interest, and as assignee for $553.51 attorney's fees and disbursements, expended by the savings institution in defending an action brought against it by Anna Gaddis, one of its depositors, against whose account $5,000 was charged in May, 1935, being the amount of a draft to her order drawn by the savings institution upon the First National Bank.   This draft, purporting to be indorsed by Anna Gaddis by "her mark," duly witnessed, and by one Merlon J. White, was presented to and paid by the Farmers National Bank.   It, guaranteeing all previous indorsements, presented it to, and received payment from, the First National Bank.   The latter charged the amount against the account of the savings institution.   The Gaddis action against the savings institution was brought to recover the amount of her deposit, including the $5,000 represented

by the draft, the receipt and indorsement of which she denied. The savings institution gave notice of the action to the First National and the Farmers banks, and invited each to participate in the defense. The Farmers Bank participated in the preparation of the case, and its attorney and director counseled with the attorneys for other interested parties, but the surety company which insured it against loss through forgery, in a letter written to the attorneys for the savings institution, refused to contribute toward the expenses to be incurred in preparing for trial, giving as a reason, " the issues involved in the suit are foreign in a sense to the issues that would be involved in a suit against the Farmers National Bank, for whom we are surety, should the latter be sued on the endorsement to the $5,000.00 check." The letter gave the following assurance: " We, however, are willing to co-operate with you in any way that we can in the handling of the situation." It was determined upon the trial that the purported indorsement of the draft by Gaddis was a forgery.

Plaintiff, insurer of the savings institution against loss through forgery, has paid the judgment, and its unopposed motion for a summary judgment against the First National Bank, which it also insures against loss through forgery, has been granted.

The following facts should be stated in view of the arguments advanced by certain of the parties: Anna Gaddis is now deceased. The Glens Falls Indemnity Company insures the Farmers National Bank against loss through forgery. It was asserted in the Gaddis action that the order to the savings institution for the withdrawal of the $5,000, purporting to have been executed by her witnessed mark, was a forgery. Her book, wherein entries were made by the savings institution as to the amount of her deposits, withdrawals and balance, did not contain an entry showing the $5,000 withdrawal. This was explained by a bank official as an oversight. Respondent Farmers National Bank opposed the granting of the motion for summary judgment at the Special Term, and urges an affirmance of the order denying it, upon the ground that there was no privity between it and the savings institution, against whom the judgment was recovered, and that lacking such privity, proof of the judgment is not sufficient to justify the direction to enter a judgment against it; further, that in this transaction its only privy was the First National Bank, not a party to the Gaddis action.

The warranty given by the Farmers Bank under the Negotiable Instruments Law (§§ 115, 116) as to genuineness of prior signatures when it presented the draft to the First National Bank for payment, is not affected by criminality or fraud practiced upon the savings institution in connection with the issuance of the draft, payable to

the order of Anna Gaddis. (*Seaboard National Bank* v. *Bank of America*, 193 N. Y. 26; *National Surety Co.* v. *Manhattan Co.*, 252 id. 247; *American Surety Co.* v. *Empire Trust Co.*, 262 id. 181.) The savings institution drew its draft payable to Anna Gaddis. Neither the fraud practiced in obtaining the draft nor the negligence of the savings institution in failing to enter the amount on the Gaddis bank book was connected in any way with, or induced the payment of, the draft by Farmers National Bank, which could pay only after Anna Gaddis had indorsed. It was liable if it paid in violation of the requirements of the drawer, viz., to Anna Gaddis or her indorsee. (*Strang* v. *Westchester County National Bank*, 235 N. Y. 68; *Ulmann Co., Inc.,* v. *Central Union Trust Co.*, 257 id. 563; *American Surety Co.* v. *Empire Trust Co., supra.*) *Hartford* v. *Greenwich Bank* (157 App. Div. 448; 215 N. Y. 726), which held the opposite, was repudiated and overruled by the *Ulmann* case (*supra*).

In an analogous case it has been said: " The doctrine of privity, however, is not so conclusive as it once was." (*City of New York* v. *Bronx County Trust Co.*, 261 N. Y. 64, 70.) " The assault upon the citadel of privity is proceeding in these days apace. How far the inroads shall extend is now a favorite subject of juridical discussion. [Citations.] In the field of the law of contract there has been a gradual widening of the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268), until today the beneficiary of a promise, clearly designated as such, is seldom left without a remedy. [Citations.] " (*Ultramares Corp.* v. *Touche*, 255 N. Y. 170, 180.) There was privity of estate between the savings institution, the First National and Farmers banks in this case through succession of relationship to the same chose in action. " ' The term privity denotes mutual succession or relationship to the same rights of property ' (Greenleaf on Ev. § 523). Privies are divided by Lord COKE into three classes — 1st, privies in blood; 2d, privies in law; and 3d, privies by estate. The doctrine of estoppel, however, so far as it applies to persons falling under these denominations, applies to them under one and the same principle, namely, that a party claiming through another is estopped by that which estopped that other respecting the same subject-matter." (*Stacy* v. *Thrasher*, 6 How. [U. S.] 44, 59; 16 U. S. 596, 598 [Little-Brown ed.].) " The term privity in estate denotes mutual or successive relationship to the same rights of property. * * * ' It is, however, the same sort of privity which enables the grantee of a purchaser to maintain an action upon the covenants of title given to his vendor.' " (*Mygatt* v. *Coe*, 124 N. Y. 212, 219; *Van Rensselaer* v. *Hays*, 19 id. 68, 91.) " Complete identity of the parties is not essential. One may be bound if he was in

privity to a party and to the subject-matter of a litigation previously determined. Privity means mutual or successive relationships to the same rights of property. The estoppel of a judgment on parties affects their claims on the property. * .* * A sound public policy demands that successive trials of the same issue of fact shall not be allowed to a party although he select different parties as defendants not technically privy to the preceding judgment or the immediate controversy in which it was granted. Having had one fair trial of an issue, whether on a contract like a joint and several note or in any other action brought against one party liable wherein the merits of a claim or defenses are common to all co-obligors — and having been unsuccessful, the plaintiff cannot try it again against other obligors." (*Haverhill* v. *International Railway Co.*, 217 App. Div. 521, 522; affd., without opinion, 244 N. Y. 582.)

In *City of New York* v. *Bronx County Trust Co.* (*supra*) the trust company had paid forged drafts, charging the amounts to the city's account, and after the commencement of the action, paid the city the sum sued for, and impleaded each indorsing bank on its guaranty. The Appellate Division (234 App. Div. 244) reversed upon the law and facts a judgment in favor of one of the indorsing banks against the depository, Bronx County Trust Company, and directed judgment in its favor against the indorsing bank. This was affirmed by the Court of Appeals. As indicated by the earlier quotation from the opinion, one of the issues was lack of privity, and another had to do with the negligence of the city in issuing the drafts. In *National Surety Co.* v. *Manhattan Co.* (*supra*) the action was brought by the surety company as assignee of its policyholder, Tucker, Anthony & Company, drawer, to recover from the drawee, Manhattan Company, on account of checks upon which indorsements had been forged. The Manhattan Company impleaded the Bank of America where the checks had been cashed. The surety company appealed from a decision of the Appellate Division (225 App. Div. 849) affirming a judgment in favor of the Manhattan Company dismissing the complaint. The Manhattan Company also appealed from that part of the judgment which dismissed its claim against the Bank of America. The negligence of the Anthony Company in drawing the checks was presented as a defense by the Manhattan Company. Both judgments were reversed, the concluding paragraph of the opinion stating: " In our case, since the defendant, the Manhattan Bank, has a remedy over against its guarantor, the Bank of America, whereby it will be reimbursed for all the moneys which it has paid out upon the forged indorsements, we think it cannot justly maintain that it has been injured by the negligence of its depositor in delay-

ing to report the forgeries after actual discovery thereof. Therefore, the plaintiff should have a recovery in full for the unauthorized payments. The judgments should be reversed."

*Halsey* v. *Bank of New York & Trust Co.* (270 N. Y. 134) was an appeal from a judgment and order of the Appellate Division (244 App. Div. 711) which reversed an order of the Special Term denying a motion for summary judgment. The plaintiff brought the action against the original defendant, Bank of New York and Trust Company, to recover moneys alleged to have been charged improperly against its account. The original defendant impleaded the indorsing banks, among them the Manhattan Company. The order of the Appellate Division granting summary judgment was reversed upon the ground that there was a triable issue as to whether or not the checks were indorsed by the person to whose order they were drawn. There had been no trial of that issue.

The Farmers National Bank took this draft relying upon the responsibility of its transferer and dealt with it at its own peril (*Crawford* v. *West Side Bank*, 100 N. Y. 50; *American Surety Co.* v. *Empire Trust Co., supra*), and by indorsing it and collecting the amount from the First National Bank warranted all prior signatures. (Neg. Inst. Law, §§ 115, 116.) " At the moment " when it transferred this draft to the First National Bank for value, that bank became possessed of a cause of action against it upon the express warranty of the genuineness of the indorsements. (*National Surety Co.* v. *Manhattan Co., supra*, p. 261.) " ' The theory of the rule that a party who is liable over and has notice and an opportunity to defend an action is bound by the judgment is not limited to cases of direct liability or suretyship, or those where the liability is predicated upon the same contract or duty. * * * ' (*Prescott* v. *LeConte*, 83 App. Div. 482, 490; affd., 178 N. Y. 585.) " (*Cohen* v. *Bass, Inc.*, 246 N. Y. 270, 278.) The same opinion says, in substance, that the rule is one of sound public policy, existing to the end that differing judicial decisions may not be made on the same state of facts, and to prevent their litigation over and over in different actions. It continues: " ' It is not essential that the party who is ultimately liable shall be liable on the same contract or could have been held liable in the former action, or that he shall be directly a party to the transaction by which the person to whom he is liable over becomes obligated; it is sufficient that between him and the party sued, the duty for a violation of which the action is brought rests primarily upon him, and that the material facts have been litigated in the former action of which he had notice and an opportunity to defend.' "

The only issue of fact raised by respondent in opposition to appellant's motion is as to the forgery of payee's indorsement. This has been once litigated in an action of which respondent had notice and an opportunity to defend.

The order should be reversed on the law, with costs, and the motion for summary judgment granted, with costs.

RHODES and HEFFERNAN, JJ., concur; McNAMEE, J., dissents, with an opinion, in which CRAPSER, J., concurs.

McNAMEE, J. (dissenting). Anna Gaddis had a deposit of about $7,000 in the Hudson City Savings Institution, herein called the savings bank, on April 1, 1935. She held an ordinary savings bank passbook showing the balance due her, and containing the usual printed rules and contract. There was presented to the savings bank on May 7, 1935, a withdrawal " receipt " for $5,000, purporting to be signed by Anna Gaddis, with her mark; the savings bank thereupon drew its draft to her order for that amount on the defendant First National Bank, with which it kept a deposit, and debited the Gaddis account accordingly on its own books. The withdrawal item was not entered in the Gaddis passbook.

This draft bearing the purported indorsement of Anna Gaddis by her mark, was indorsed by the defendant White and was deposited in the Farmers Bank by him to his credit, on May 9, 1935. Thereupon the Farmers Bank indorsed the draft and presented it to the First National Bank, where it was paid to the Farmers.

On October 24, 1935, Anna Gaddis made a demand on the savings bank for the full amount of her deposit and payment thereof was refused, except a balance of about $2,000; and on the same day she brought an action on her deposit against the savings bank, by the service of a summons only, with notice of the amount claimed.

On the 16th day of November, 1935, the savings bank wrote a letter to the Farmers Bank, and referred to the $5,000 draft, and its course up to the time of its payment by the First National, and stated that it had been sued by Anna Gaddis for the full amount of her said deposit, and added that " We understand that claim is made by the said Anna Gaddis that she did not endorse said draft," and further, that " This information is given you for the purpose of enabling you to take any proceedings which you think are desirable for your protection and the protection of the other parties interested. As soon as the complaint has been served in the action, we will send you a copy of it and we will then be pleased to discuss with you the matter of the defending of the suit, as we shall look to you for reimbursement in case said draft was illegally paid."

In her complaint served December 3, 1935, Anna Gaddis alleged that no part of her deposit had been withdrawn by her or with her authority, and that the full amount thereof was owing. The savings bank interposed its answer admitting the complaint, except as to the balance in its hands, and alleged four defenses: (1) That Anna Gaddis had received from the savings bank by way of withdrawal from her account a draft for $5,000, upon the presentation of her passbook; that the savings bank had delivered its draft to her order on the First National Bank for that amount; that she had received the money from the Farmers Bank; and that it was paid by the First National Bank (there was no claim that the savings bank had paid the draft, and in fact it did not pay it); (2) that it was the practice of Anna Gaddis to have Mrs. Haner present her book and make withdrawals, and that the savings bank had exercised due care; (3) that Anna Gaddis was negligent in permitting Mrs. Haner to have possession of her passbook and withdraw funds; and (4) that the passbook is the depositor's voucher for the payment of items entered therein, and that the bank was justified in making payments to those who present the passbook.

Copies of the complaint and answer were forwarded by the savings bank to the Farmers Bank.

In brief, Anna Gaddis made claim for her deposit; and the savings bank presented affirmatively the issues that she had been paid, was guilty of negligence, and was bound by the use of her passbook and the entries therein. Only in the letter is there found any reference to possible irregularity; and that, when it stated, " We understand that claim is made by the said Anna Gaddis that she did not endorse said draft." This letter was written before the complaint was served. The pleadings in that action created no issue of fraud, nor of forgery, nor of improper payment by any one other than the savings bank. The clerk's minutes of trial show that, at the close of the plaintiff's case and at the close of all the proof, the savings bank moved for a dismissal of the complaint on the grounds of plaintiff's negligence; and the judgment indicates the trial of no other issue. And even now, the claimed facts and circumstances leading up to the utterance of the draft by the savings bank, and its indorsement, are unknown, except as they are related in affidavits on this motion. The evidence in the savings bank action is not in the record.

In the present action the complaint and the answer of the First National allege forgery in the indorsement and collection of the draft in question at the time it was presented to the Farmers Bank. This charge is denied by the Farmers Bank in its answer. Here is the issue to be resolved in this action. But the plaintiff and the

First National seek to avoid a trial of that issue, and to procure summary judgment, on the theory that the savings bank " vouched in " the Farmers Bank in the Gaddis action, and thereby bound the Farmers Bank by an adjudication of forgery in that action. As shown by the pleadings, clerk's minutes and judgment in that action, no such issue of fraud or forgery was presented, tried or adjudged therein — even if the Farmers Bank could have been " vouched over " in that action, and even if the notice from the savings bank to the Farmers Bank had been timely and adequate for that purpose. In my judgment, neither assumption is sound.

It is academic that the general relation existing between a bank and its depositor is that of debtor and creditor. (*Baldwin's Bank* v. *Smith*, 215 N. Y. 76, 82; *Bank of Br. North America* v. *Merchants' Nat. Bank of N. Y.*, 91 id. 106.) That was the only relation between the savings bank and the First National (drawer and drawee), while the former maintained its deposit with the latter. And there was no contractual relation whatever between the savings bank and the Farmers; and, therefore, the Farmers could not be liable over to the savings bank on the facts of this case. The Farmers' responsibility was to the First National only, because it guaranteed the indorsements to the paying bank. The savings bank could not be injured by an improper payment of the Farmers or the First National, if there were one. It paid nothing, and lost nothing thereby. And in addition, the savings bank did not seek from the First National payment to it of its deposit, the $5,000 in question, and there was no refusal to pay, until June 18, 1936, long after it sought to vouch in the Farmers Bank, and months after the trial and the judgment in the Gaddis action against the savings bank. Of course, until demand for payment of its deposit, the savings bank could have no action against its drawee, the First National, and had suffered no loss. The appellant frankly admits in its brief: " It is, of course, recognized that the Savings Institution could not have recovered in an action against the Farmers Bank. Its cause of action was against The First National Bank." But even then demand upon the latter was essential. But whether admitted or not, the fact is plain from the relation, and the lack of it, between the banks. (*General Fire Assurance Co.* v. *State Bank*, 177 App. Div. 745, 750.)

This lack of relation between the savings bank and the Farmers Bank gives rise to the basic question before us. Although it is evident that an issue of forgery exists on the pleadings between the First National and the Farmers Bank in this action, the First National contends that the Farmers Bank may and should be denied a trial of that issue here, because it was vouched in in the Gaddis

action by the savings bank. The savings bank could not vouch in the Farmers Bank in that action, because the Farmers Bank was not liable over to the savings bank. As before indicated, the Farmers Bank was neither liable nor interested in the Gaddis action. The doctrine of " vouching in " a party is one aspect of *res adjudicata;* and that doctrine has no application to the facts here. All of the cases in point recognize the essential element that the party to be vouched in must be liable over to the voucher. (*Cohen* v. *Bass, Inc.,* 246 N. Y. 270, 278; *Matter of Culver Contracting Corp.* v. *Humphrey,* 268 id. 26, 41; *New York Title & Mortgage Co.* v. *Title Guarantee & Trust Co.,* 187 App. Div. 537, 540.)

Section 193 of the Civil Practice Act is basically the modern and statutory development of the same doctrine. Whether at common law or under the statute the purpose is the same, viz., to bind the person vouched in, or brought in as a party, by the judgment to be rendered in the action. And under our statute the person sought to be brought in and bound must be liable over, at the time, to the defendant who seeks to bring him in. (*Fox* v. *Western New York Motor Lines, Inc.,* 257 N. Y. 305, 307, 308; *Rhynders* v. *Greene,* 255 App. Div. 401, 403.) The theory in either instance is that the person brought in is liable over to the party who seeks to bind him by the judgment. And that the Farmers Bank was not liable to the savings bank in the Gaddis action is not open to dispute, and is conceded.

But if the Farmers Bank could be regarded as liable to the savings bank under any circumstances claimed here, the notice by which the savings bank sought to vouch in the Farmers was wholly inadequate. It was given before any issues had been framed, and even before the complaint had been served. It stated simply that the savings bank " understood " that Anna Gaddis " claimed " she did not indorse the draft; and that " as soon as " the complaint was served, it would " then " discuss a defense of the suit. When later served the pleadings created no issue in which the Farmers Bank could have any interest. They dealt only with the contractual relations between the plaintiff Gaddis and the defendant savings bank, and charges of negligence on the part of that plaintiff. This was not notice that the Farmers Bank was ultimately liable to the savings bank on the instrument in question or in that action, nor could it be regarded as an invitation to defend, or an opportunity to do so. As a matter of law, the notice was not sufficient on its face to bind the vouchee on issues thereafter to be made, issues which, when made, did not concern the vouchee.

What issues were tried in the Gaddis action does not appear from the judgment roll therein. If the trial was confined to the

pleadings, those issues did not include forgery, or other fraud. What occurred on a trial or in an action in a court of record, is not a proper subject-matter for affidavits on which to prevent a trial or to base a final judgment in another action. The proceedings themselves are the proof. It cannot be said in this case with finality that the Gaddis action was tried and decided upon an issue of forgery. That issue was not raised by the pleadings, and several other issues were pleaded and tried, and a general verdict rendered. Even if an opposite view could be held, then a question of fact is present for trial in this case.

And finally it might be observed that the First National Bank was not a party to the Gaddis action, and did not pay to the savings bank the $5,000 in question which it had on deposit. It succeeded to no rights whatever from the savings bank, and it lost nothing by payment. The savings bank did not pay, nor was it reimbursed for the payment of the judgment against it in the Gaddis action by the plaintiff surety in this action. The same surety also insured the First National. And, of course, in any action by the plaintiff against the First National to recover because of the single loss in question, the First National had a complete defense under its surety contract against the plaintiff. But despite these considerations, the First National has permitted a judgment against it herein by consent in favor of the plaintiff, and now seeks to recover against the Farmers Bank the amount for which it has become liable to the plaintiff on its own default. When all the facts are available, there may be a question whether the First National Bank is entitled to a judgment against the Farmers Bank in any event, and without regard to the rights the plaintiff surety may have against the Farmers Bank. It well may be that a bank which has sustained a loss and has been indemnified by a surety, and has subrogated the surety to the latter's rights, may not in its own right maintain an action for the loss against another. If for no better reason, the confusion of facts here might well persuade the Special Term to deny summary judgment.

The order denying the motion for summary judgment should be affirmed, with costs.

CRAPSER, J., concurs.

Order reversed on the law and facts, with costs, and the motion for summary judgment granted, with costs.