Matthew M. Levy, J.
On or about March 4,1953, a depositor, under the name of “ Guillermo Padilla G.” (the letter “ G ” being the common Central American designation for the name Gonzalez), opened a checking account in an office of the defendant Banco Commercial Mexicano, S. A., in Mexico City and deposited two checks — one in the amount of $5,000, the other in the amount of $10,500. The checks appeared to be drawn to the order of Guillermo Padilla G. by the Costa Bican banking firm of Martinez Hnos., Ltd., on its depository, Grace National Bank in New York City. The checks bore the stamped indorsement “ Guillermo Padilla Gonzalez, Importaciones Y Exportaciones, Mexico: D. F.” and underneath were signed “ Gmo. Padilla G. ’ ’. Each of these checks was then indorsed by Banco for collection, under which it guaranteed the previous indorsements, and which also contained a notice that ‘ ‘ The banks shall abstain from paying it in cash ”. Banco forwarded the checks to its agent, Manufacturers Trust Company in New York City, for collection. Manufacturers, also guaranteeing the previous indorsements, on March 6, 1953, presented the checks to Grace, the drawee bank, for payment. On March 9, 1953, Grace paid the same to Manufacturers, which immediately credited the proceeds to the account of Banco. On March 11, 1953, Manufacturers received a cable from Banco, inquiring whether Grace had paid the checks, to which Manufacturers responded by cable on the same day that there had been payment — thus effectuating an irrevocable credit by Manufacturers in the sum of $15,500 in favor of Banco, as if the proceeds of the checks had been directly remitted from Manufacturers to Banco. Subsequently, Banco paid its depositor, “ Guillermo Padilla Gonzalez.”
The checks in fact had not been issued by Martinez. They were printed and numbered identically with those used by that firm, but the signatures of the drawer had been forged. Also, the instruments named a wholly fictitious payee. All of the banks acted in good faith, and without knowledge of the facts. The law of Mexico required Banco to investigate and to verify the identity of its depositor when Banco credited the account opened by the payee with the amounts of the checks. Manufacturers denies — on information and belief only — that Banco failed to make the required investigation; but no direct proof has been presented, one way or the other, on this. When Grace ascertained from its depositor, Martinez, that the checks were forgeries as to the maker and fictitious as to the payee, Grace *367 refunded the $15,500 to its depositor, Martinez, and demanded repayment of said amount from Manufacturers and Banco. Under a bond indemnifying Grace, the American Surety Company is the subrogee of Grace by virtue of American’s payment to Grace of the loss suffered by Grace.
The action is brought by American against Manufacturers and Banco to recover the sum of $15,500 with interest. The plaintiff alleges that it is unable to determine whether both of the defendants are liable to the plaintiff, and — if only one of them is so liable — the plaintiff is unable to determine which one; accordingly, in its complaint, the plaintiff asks the court, to take all of the evidence in the ease and determine the liability of the parties to the plaintiff (Civ. Prac. Act, § 212, subd. 2, formerly § 213). The answer of Manufacturers contains a cross claim against Banco (Civ. Prac. Act, § 264). Manufacturers has applied for summary judgment against the plaintiff, asking that the complaint be dismissed (Rules Civ. Prac., rule 113). The plaintiff cross-moved for summary judgment in its favor against Manufacturers and for a severance of the action as to Banco. After the making of the motion by Manufacturers, Banco voluntarily appeared in the action, and after the argument, Banco served its answer to the complaint; but Manufacturers has not yet served upon Banco a copy of the pleading containing Manufacturers’ cross claim against Banco.
The plaintiff’s affidavits and briefs present several contentions in opposition to the motion for summary judgment. It is claimed first that the motion by Manufacturers is premature, in that Banco, although appearing in the action, had not yet served its answer when the motions were made, and in that no pleading has been served on it by Manufacturers, although a cross claim against Banco is asserted in the latter’s answer. The plaintiff urges that Manufacturers’ motion is premature upon the further ground that, since the action brought by it invokes subdivision 2 of section 212 of the Civil Practice Act, the liability of the parties should be determined only after examination of all the facts, and that cannot be done on the present state of the pleadings.
The objection that Manufacturers’ motion is premature is overruled — and for several reasons. The plaintiff’s position is inconsistent with that objection, for it also moved for summary judgment in its favor, as against Manufacturers only, without awaiting Banco’s answer (it was not served until subsequently) and without withholding its motion until Manufacturers served its codefendant Banco, and received the latter’s pleaded response, if Banco desired to serve one (cf. Fursh *368 pin v. Monticello Co-Op. Fire Ins. Co., 249 App. Div. 366). Manufacturers, too, moved for summary judgment against the plaintiff on the state of the pleadings as they were. Obviously, both the plaintiff and Manufacturers consider the answers of Banco unnecessary. Presumptively, both participants on these motions assume that Banco’s rights and liabilities under the present status of the pleadings have no relation to the positions or contentions of the moving parties, as neither now seeks affirmative relief against Banco. Moreover, the plaintiff having moved for summary judgment — albeit in this instance by way of cross motion — rule 113 of the Buies of Civil Practice expressly empowers “ to the judge hearing the motion to award judgment ” in favor of Manufacturers against the plaintiff, “ [i] f upon such motion it shall appear that the opposing party [Manufacturers] is entitled to judgment ”. Finally, determination of liability after trial, where there is doubt as to which defendant is liable, may be appropriate (Civ. Prac. Act, § 212, subd. 2), but this rule presupposes that a cause of action exists (Norton v. Southern Railway Co., 138 Misc. 784; see Fifteenth Annual Report of N. Y. Judicial Council, 1949, p. 219). Since Manufacturers and Banco are claimed to be severally liable, the fact that the latter had not joined issue does not constitute a jurisdictional or procedural defect with respect to a determination of the controversy as between the plaintiff and Manufacturers. And, insofar as the controversy between the defendants themselves is concerned, that is a matter as to which the plaintiff has no legal concern, for the statute expressly provides that the “ controversy between the parties [defendant] shall not delay a judgment in the main controversy [between the plaintiff and a defendant] ” (Civ. Prac. Act, § 264). I shall proceed to a consideration of the merits.
We start from the rule in the field of commercial law — established nearly two centuries ago in Price v. Neal (3 Burr. 1354, 1357) — that “ it was incumbent upon the plaintiff to be satisfied,£ That the bill drawn upon him was the drawer’s hand ’, before he accepted or paid it: but it was not incumbent upon the defendant, to inquire into it.” (Italics in original.) Expressed in another way, the rule is that £ ‘ if the drawee of a bill of exchange to which the drawer’s name has been forged accepts or pays the same, he can neither repudiate the acceptance nor recover the money paid, since he is bound to know the drawer’s signature ” (Trust Co. of Amer. v. Hamilton Bank, 127 App. Div. 515, 517; National Park Bank v. Ninth Nat. Bank, 46 N. Y. 77, 80). But I recognize that the rule may not be without its exceptions — for there are adjudicated *369 situations where drawee banks were nevertheless held entitled to recover back the payments made (City of New York v. Bronx County Trust Co., 234 App. Div. 244, affd. 261 N. Y. 64; Fallick v. Amalgamated Bank of New York, 232 App. Div. 127; Hartford Accident & Ind. Co. v. First Nat. Bank, 256 App. Div. 30, revd. on other grounds, 281 N. Y. 162; Cairo Banking Co. v. West, 187 Ga. 666; First Nat. Bank of Winnsboro v. First Nat. Bank of Quitman, 299 S. W. [Texas] 856; Johnston v. Schnabaum, 86 Ark. 82; Farmers Nat. Bank of Augusta v. Farmers & Traders Bank, 159 Ky. 141; Ford & Co. v. People’s Bank of Orangeburg, 74 S. C.180; cf. Bergstrom v. Ritz-Carlton Restaurant & Hotel Co., 171 App. Div. 776; Trust Co. of Amer. v. Hamilton Bank, 127 App. Div. 515, 517, supra).
As I read these cases and others like them, I gather that the view of these courts is that the rule laid down by Lord Mansfield in Price v. Neal is not absolute or inexorable in every set of circumstances, and that the true basis for the doctrine is the principle of weighing the equities between the parties. For example, it is said that “ In order to recover plaintiff [drawee bank] must show that the defendant [collecting bank] cannot retain the money with good conscience. * * * The equities of the drawee who has paid are not superior to those of the innocent collecting bank who had full right to act upon the assumption that the former knew the drawer’s signature or at least took the risk of a mistake concerning it ” (United States v. Chase National Bank, 252 U. S. 485, 495-496). What is or what is not good conscience, what is or what is not to be the result of the balancing of the equities, in any particular case depends upon the facts in that case.
Affirmative knowledge of infirmity would, of course, have a direct bearing on the issue of good conscience. There is no intimation that either G-race or Manufacturers had knowledge of the facts at the time of their contacts with the instruments here involved. Lack of reasonable care in the circumstances is another factor which may tip the scales in a balancing of the equities. On that score, it is obvious — at least to me — that, as between Grace and Manufacturers, the equities are in favor of Manufacturers. Iteration of the basic facts will, I think, demonstrate this quite readily: Martinez of Costa Rica is a depositor in and has an account with the Grace bank in New York; A forges Martinez’ name as maker to a check drawn on Grace, and .made payable to X, a fictitious person. An account in the name of X is opened by A, posing as X, with the Banco bank in Mexico; the check is indorsed in the name of X, and it is deposited in X’s account with Banco. Banco guarantees *370 A’s indorsement, and sends the check to the Manufacturers bank, its correspondent in New York, for collection. In the usual course of trade, Manufacturers guarantees the prior indorsements, and sends the check to Grace for payment. Grace makes payment. It would not be expected by Grace that Manufacturers would have knowledge of the verity of the signature of the maker or of the first indorser on the check; nor would it be expected that Grace would have knowledge of the verity of the payee’s indorsement. But Grace would reasonably be expected to know, before it paid out the money to Manufacturers, and enabled Manufacturers to pay out the proceeds to Banco, whether or not the maker’s (its own depositor’s) signature on the check was or was not genuine. When Manufacturers guaranteed the prior indorsements, it had the right to rely upon Banco’s guarantee of the payee’s indorsement. I see no lack of diligence on Manufacturers’ part in what it did. The guarantee by Manufacturers was directed to the payee’s indorsement, not to the maker’s signature. And, while it may be that Grace had the right to rely upon Manufacturers’ guarantee of the payee’s indorsement, Grace could — as between it and Manufacturers —■ rely only upon its own resources as to the genuineness of the signature of the maker. That being so, Grace could not be held to have been lulled into a sense of security with respect to the genuineness of the signature of the drawer — Grace’s-depositor. It was Grace who had the last chance to avoid the consummation of the fraud. When Grace did not verify the signature of the maker — its own depositor — before paying Manufacturers and before Manufacturers made payment in turn to Banco — it was clearly negligent in the premises.
Thus, it is my holding that good conscience dictates that the loss as between Grace and Manufacturers must be borne by Grace and not Manufacturers — and that no issue of fact needs resolution for that determination to be made. What the result may be in seeking to balance the equities as between Grace and Banco need not now be determined■ — -for Banco is not a party to these motions. This much must be said: Banco’s alleged noncompliance with the requirements of law — Mexican (specifically) and business (generally) —in not investigating the identity of the payee-indorser-depositor when the account was opened with Banco —would have a bearing on the claim of Grace against Banco, or on the cross claim of Manufacturers against Banco, but any omission or neglect by Banco in that respect cannot (in the circumstances disclosed by the record before me) be imputed or charged to Manufacturers.
*371 The motion made by the defendant Manufacturers for summary judgment dismissing the complaint against it is granted. The cross motion for summary judgment by the plaintiff, as the subrogee of Grace, against the defendant Manufacturers is denied. The action is severed as against the defendant Banco. Settle one order on both motions.